**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

JOSE ROBERTO RIOS-GUTIERREZ, JOSE
JUAN MENDOZA-SERVIN, FRANCISCO
JAVIER MARTINEZ-MENDEZ,
JONATHAN RODRIGUEZ-ANAYA, and
CESAR EDGARDO AVENDAÑO-
MARTINEZ, *on behalf of themselves and all
others similarly situated*,

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

Civ. Action No.:

*Plaintiffs,*

*v.*

BRIGGS TRADITIONAL TURF FARM,
INC.; L.C. BRIGGS TURF FARM, LLC;
LAWRENCE "LARRY" BRIGGS; CAPEN
BRIGGS; and FELIX RODRIGUEZ,

*Defendants.*

Plaintiffs José Roberto Ríos-Gutiérrez, José Juan Mandoza-Servín, Francisco

Javier Martínez-Méndez, Jonathan Rodriguez-Anaya, and Cesar Edgardo Avendaño-

Martínez (collectively, "Plaintiffs"), on behalf of themselves and all others similarly

situated, by and through their attorneys Dugan Schlozman LLC and Radford &

Keebaugh, LLC[1], as and for their Complaint, allege as follows:

---
[1] *Pro hac vice petition forthcoming.*

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 1 of 24

## Preliminary Statement

1. Defendants Briggs Traditional Turf Farm, Inc. ("Briggs Traditional"), L.C. Briggs Turf Farm, LLC ("Briggs Turf"), Lawrence "Larry" Briggs, Capen Briggs, and Felix Rodriguez employed Plaintiffs and other Mexican nationals who came to the United States with H-2A temporary foreign worker visas during two or more seasons between 2018 and 2020.

2. Though Defendants told Plaintiffs, other H-2A visa holders ("H-2A workers"), and the United States government that the H-2A workers would "work in fields" at the Defendants' sod farm in Missouri, the Defendants instead required the Plaintiffs and other H-2A workers to lay sod and perform other landscaping work at commercial, residential, and government properties in western Missouri and eastern Kansas.

3. In fact, Defendant L.C. Briggs Turf Farm, LLC ("Briggs Turf") operated the turf farms where Defendants falsely said Plaintiffs and other H-2A workers would work. Briggs Turf is an alter ego of Defendants Briggs Traditional and Lawrence Briggs.

4. If Plaintiffs and the other H-2A workers had worked in agriculture at Briggs Turf's sod farm, they would have been exempt from overtime premiums, and Defendants would not have been required to make payroll tax Social Security contributions. Yet, as landscapers, Plaintiffs and the other H-2A workers should have been paid overtime *and* Defendants should have made payroll tax Social Security Contributions. During nearly every workweek—some of which exceeded 60 hours—the Defendants paid neither.

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 2 of 24

5.       Plaintiffs therefore bring this collective and class action seeking the overtime wages they are owed under the Fair Labor Standards Act ("FLSA") and state wage and hour law, as well as related liquidated and other damages. Plaintiffs and other H-2A workers also seek redress for Defendant Briggs Traditional's filing of false information returns.

## Jurisdiction and Venue

6.       The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1337; 29 U.S.C. § 216(b) (the Fair Labor Standards Act); and 26 U.S.C. § 7434 (false information returns).

7.       The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claims.

8.       Venue is proper in this district pursuant to 28 U.S.C. §1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

9.       Defendants reside and/or do business in this district.

## Parties

10.       Named Plaintiff José Roberto Ríos-Gutiérrez came to Missouri from Mexico as an H-2A worker in 2018, 2019, and 2020 to work for the Defendants.

11.       Mr. Ríos-Gutiérrez currently resides in Kansas, but he maintains his permanent residence in Mexico. Mr. Ríos-Gutiérrez's consent to join this lawsuit is attached as Exhibit 1.

12.     Named Plaintiff José Juan Mendoza-Servín came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

13.     Mr. Mendoza-Servín currently resides in and maintains his permanent residence in Mexico. Mr. Mendoza-Servin's consent to join this lawsuit is attached as Exhibit 2.

14.     Named Plaintiff Francisco Javier Martínez-Méndez came to Missouri from Mexico as an H-2A worker in 2018 and 2020 to work for the Defendants.

15.     Mr. Martínez-Méndez currently resides in and maintains his permanent residence in Mexico. Mr. Martínez-Méndez's consent to join this lawsuit is attached as Exhibit 3.

16.     Named Plaintiff Jonathan Rodríguez-Anaya came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

17.     Mr. Rodríguez-Anaya currently resides in and maintains his permanent residence in Mexico. Mr. Rodríguez-Anya's consent to join this lawsuit is attached as Exhibit 4.

18.     Named Plaintiff César Edgardo Avendaño-Martínez came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

19.     Mr. Avendaño-Martínez currently resides in and maintains his permanent residence in Mexico. Mr. Avendaño-Martinez's consent to join this lawsuit is attached as Exhibit 5.

20.     At all relevant times, Plaintiffs and the other H-2A workers were non-exempt employees of the Defendants within the meaning of the FLSA, Missouri law, and Kansas law.

21.   Defendant Briggs Traditional is a for-profit Missouri corporation with its registered address at 22800 Shadow Glen Dr., P.O. Box 219, Peculiar, Missouri 64078 and its Principal Office Address at 23017 S. Harper St, Peculiar, Missouri 64078.

22.   Briggs Traditional is a landscaping business that lays and maintains sod at businesses, homes, and government buildings in western Missouri and eastern Kansas.

23.   Briggs Turf is a Missouri Limited Liability Company with its registered address at 23200 South Harper Road, Peculiar, Missouri 64078.

24.   Briggs Turf operates farms for the purchase and sale of sod.

25.   Upon information and belief, Defendant Lawrence "Larry" Briggs ("Larry Briggs") resides in Cass County, Missouri.

26.   Defendant Larry Briggs is the Director, President, and Secretary of Defendant Briggs Traditional.

27.   Upon information and belief, Defendant Larry Briggs exercised operational control over Defendant Briggs Traditional.

28.   Defendant Larry Briggs is one of two members of and, upon information and belief, directs the operations of Defendant Briggs Turf.

29.   Defendant Larry Briggs signed the state and federal government documents to secure H-2A visas for Plaintiffs and the other H-2A workers.  These documents set forth the terms and conditions of Plaintiffs' and the other H-2A workers' employment with Defendants, including the wage rates, the type of work, and the work hours.

30. Defendant Larry Briggs exercised control of Plaintiffs' and other H-2A workers' work.

31. Defendant Larry Briggs had the power to establish, and did establish, the Plaintiffs' and other H-2A workers' terms of employment.

32. Defendant Larry Briggs had the power to hire and fire Plaintiffs and other H-2A workers.

33. At all relevant times, Defendant Capen Briggs managed and supervised the operations of Defendant Briggs Traditional.

34. Defendant Capen Briggs exercised control of Plaintiffs' and other H-2A workers' work, directly or indirectly.

35. Defendant Capen Briggs had the power to establish, and did establish, the Plaintiffs' and other H-2A workers' terms of employment.

36. Upon information and belief, Defendant Capen Briggs had the power to hire and fire Plaintiffs and other H-2A workers.

37. Defendant Capen Briggs exercised operational control over significant aspects of the day-to-day functions of Defendant Briggs Traditional.

38. Upon information and belief, Defendant Felix Rodriguez resides in Cass County, Missouri.

39. Defendant Felix Rodriguez supervised the Plaintiffs' and other H-2A workers' work for Defendant Briggs Traditional.

40. Defendant Felix Rodriguez issued job assignments to the Plaintiffs and other H-2A workers on a daily basis. In this capacity, Defendant Felix Rodriguez

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 6 of 24

controlled both the type and quantity (*i.e.* the hours) of work Plaintiffs and other H-2A workers performed.

41. Defendant Felix Rodriguez had the power to, and did, discipline Plaintiffs and other H-2A workers, including suspending them without pay for varying periods of time, for what Mr. Rodriguez viewed as misconduct. This "misconduct" included staying home from work when an employee was sick; a policy that continued during the COVID19 pandemic.

42. Defendants are an enterprise engaged in commerce or in the production of goods for commerce.

43. Upon information and belief, Defendants have a gross volume of sales made or business done of not less than $500,000 per year.

44. At all relevant times, each Employer Defendant was an "employer" of Plaintiffs and the other H-2A workers within the meaning of the FLSA, Missouri law, and Kansas law.

45. At all relevant times, Plaintiffs and the other H-2A workers were "employees" of the Defendants within the meaning of the FLSA, Missouri law, and Kansas law.

46. At all relevant times, the Employer Defendant "employed" Plaintiffs and other H-2A workers within the meaning of the FLSA, Missouri law, and Kansas law.

47. Plaintiffs consent in writing to become party Plaintiffs in this action. *See* Ex. 1, attached hereto.

## IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A

## PROGRAM

48. Only "an alien … who is coming temporarily to the United States to perform agricultural labor or services … of a temporary or seasonal nature…." is eligible to receive and H-2A visa. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

49. "Agricultural labor or services" in turn is defined in the Internal Revenue Code, 26 U.S.C. § 3121(g) and the FLSA, 29 U.S.C. § 203(f), as well as in implementing regulations.

50. Laying sod at and landscaping commercial, residential, and government properties are not "agricultural labor or services."

51. An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

52. Under the H-2A program, employers must file a temporary labor certification application (Form ETA 9142A) with the USDOL's Employment and Training Administration. *See* 20 C.F.R. § 655.130.

53. The employer or the employer's agent must indicate on the Form ETA 9142A the Standard Occupational Classification ("SOC") Occupational Code and the SOC Occupational Title for the work the H-2A workers are to perform.

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 8 of 24

54. The employer filing a temporary labor certification application also must sign an attestation (Form ETA 9142A, Appendix A) declaring, under penalty of perjury, that

> I have read and reviewed this application, including every page of the Form ETA-9142A, Form ETA790/790A, and supporting documentation, and that to the best of my knowledge the information contained therein is true and accurate. I understand that to knowingly and/or willfully furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both.

55. The application must include a job offer, known as a "Job Order," (ETA Form 790) which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers.

56. Among other things, the Job Order must provide an accurate description of the work location, the work to be performed, and the work requirements.

57. The employer submits the Job Order to the State Workforce Agency ("SWA") in the state where the work will be performed.

58. In Missouri, the SWA is the Missouri Office of Workforce Development ("MOWD").

59. If an employer's Job Order appears to meet the minimum federal regulatory requirements and otherwise appears valid, the SWA approves the Job Order, and U.S. worker availability is tested by use of the interstate Employment Service system and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-

2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

60. The Job Order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly employed U.S. workers.

## V. STATEMENT OF FACTS

### Unpaid Overtime

61. As is evident from their paystubs, Plaintiffs regularly worked more than 40 hours per week. However, the Defendants rarely paid an overtime premium of time and one half of their regular hourly pay rate for their hours above forty.

62. For example, for the week ending June 23, 2019, Plaintiff Avendaño-Martínez worked 50.44 hours but was not paid an overtime premium; the week ending May 3, 2020, Plaintiff Rios-Gutierrez worked 56.6 hours but was not paid an overtime premium; and the week ending October 4, 2020, Plaintiff Martinez-Mendez worked 64.35 hours but was not paid an overtime premium.

63. Upon information and belief, Defendants intentionally misclassified Plaintiffs and other H-2A workers as agricultural workers in part to avoid paying overtime premiums.

### Filing False Information Returns with the U.S. Internal Revenue Service

64. Under federal law, employers are not required to pay the employer's share of Social Security taxes to the U.S. Internal Revenue Service ("IRS") for workers employed with H-2A visas.

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 10 of 24

65.  However, Defendants intentionally misclassified the Plaintiffs and other H-2A workers as agricultural workers to secure their H-2A visas.

66.  Defendants knew Plaintiffs and other H-2A workers would not be employed in agriculture and therefore were not properly classified as H-2A workers.

67.  Upon information and belief, in an attempt to defraud the IRS, Defendant knowingly misrepresented the Plaintiffs' and other H-2A workers' taxable Social Security wages in quarterly IRS Form 941s and/or other information returns Defendants filed with the IRS in 2018, 2019, and 2020.

Alter-Ego Claims

68.  Defendants Briggs Traditional and Briggs Turf served as mere alter egos of each other and of the Defendant Larry Briggs.

69.  Upon information and belief, Defendants Briggs Traditional, Briggs Turf, and Larry Briggs ignored corporate formalities and used the corporate form to perpetuate fraud (a) by co-mingling their assets; (b) by falsely indicating to the federal and state government that Plaintiffs would work on farms, which were owned or operated by Briggs Turf, rather than laying sod and performing other landscaping on commercial, residential, and government properties throughout western Missouri and eastern Kansas, in direct contravention of federal law; and (c) by using Briggs Traditional and Briggs Turf as vehicles to defraud the federal and state government.

70.  Defendant Larry Briggs used Briggs Traditional and Briggs Turf as a subterfuge to commit fraud.

71. Allowing Defendant Larry Briggs to use Briggs Traditional and Briggs Turf to shield himself from personal liability and the business entities from joint and several liability for the violations of law they committed would work an injustice on Plaintiffs.

### Other Allegations

72. Defendant undertook all of the actions and omissions alleged above either directly or through its agents who were authorized to undertake such actions and omissions.

73. The actions and omissions alleged above were willful in that Defendant was aware of its obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe its actions were in compliance with those laws.

### FLSA Collective Allegations

74. Plaintiffs bring their FLSA claims on behalf of themselves and those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required overtime wages at Defendants' operations between May 28, 2018 and the date of preliminary approval of the opt-in class.

75. Plaintiffs and other H-2A workers were subject to the same policies and practices of Defendants.

76. Common proof applicable to Plaintiffs and the other H-2A workers will show that the Defendants failed to properly pay overtime wages to Plaintiffs and other H-2A workers.

77.     Plaintiffs are currently unaware of the identities of all the employees who would

        be members of the FLSA opt-in class, but this information is readily ascertainable

        from the Defendants' records.   The Defendants therefore should  be required to

        provide Plaintiffs with a list – including last known addresses, telephone numbers,

        and email addresses if known – of all individuals who were H-2A workers for

        Defendants between May 28, 2018 and the present.

Rule 23 Class Allegations

78.     The Plaintiffs bring their false information return and their state law claims – the

        Second, Third, and Fourth Causes of Action– on behalf of themselves and a class

        of persons ("the Class") consisting of:

>       All individuals who, between May 28, 2017 and the present (1)
>       received wages from Defendant Briggs Traditional; (2) were non-
>       agricultural workers; and (3) were H-2A visa holders.

79.     Excluded from the Class are the legal representatives, officers, directors, assigns,

        and successors of Defendants; any individual who at any time during the class

        period has had a controlling interest in any Defendant; and all persons who submit

        timely and otherwise proper requests for exclusion from the Class.

*Numerosity*

80.     Upon information and belief, there are approximately 40 H-2A workers who

        would be members of the Class in this action.

81.     The members of the Class are sufficiently numerous that joinder of all members is

        impractical.

82.     Plaintiffs are currently unaware of the identities of all of the employees who

        would be members of the Class, but this information is readily ascertainable from

Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals meet the Class definition.

*Existence and Predominance of Common Questions*

83.   Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual Class members.

84.   These common questions include:

a)   Whether Defendants failed to pay Plaintiffs and the Class members at a rate of time and one half of their regular rate of pay for all hours worked over 40 in a work week, in violation of Missouri and Kansas law;

b)   Whether Defendants had a policy of failing to pay Plaintiffs and the other H-2A workers as required by law;

c)   Whether Defendants' policy of failing to pay Plaintiffs and the other H-2A workers was willful;

d)   Whether Defendants filed false information returns with the IRS with respect to the Plaintiffs' and other H-2A workers' wages;

e)   Whether Defendant Briggs Traditional, Briggs Turf, and Larry Briggs are alter egos of each other; and

f)   The nature and extent of class-wide injury and the measure of damages for those injuries.

*Typicality*

85.   Members of the proposed Class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

86.   Plaintiffs and the proposed class members have the same statutory rights under the Missouri and Kansas wage payment laws and are all non-exempt employees within the meaning of these laws.

87.   Plaintiffs and the proposed class members performed the same type of work under the same circumstances giving rise to the same claims.

88.   Plaintiffs and proposed class members suffered similar types of damages.

89.   Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were employees who worked for the Defendants and suffered the same violations as the proposed class members.

90.   Defendants' practices with respect to informational returns submitted to the IRS were the same with respect to Plaintiffs and the Class members.

91.   Plaintiffs' interests are co-extensive with the interests of the Class members; Plaintiffs have no interest adverse to the Class members.

<em><u>Adequacy</u></em>

92.   Plaintiffs will fairly and adequately represent the interests of the class members. Their interests do not conflict with the interests of the members of the Class they seek to represent.

93.   Plaintiffs understand that, as Class representatives, they assume a responsibility to the class to represent its interests fairly and adequately.

94.   Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

95.    A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

96.    The damages suffered by each individual Class member may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual prosecution of the litigation necessitated by Defendants' conduct.

97.    Further, it would be difficult for members of the Class to obtain individual redress effectively for the wrongs done to them.   If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendants.

98.    The members of the Class are indigent foreign nationals and migrant workers who lack the means and resources to secure individual legal assistance, have virtually no command of the English language or familiarity with the United States legal system, and are particularly unlikely to be aware of their rights to prosecute these claims.

99.    Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

100.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

101.    This case does not present individualized factual or legal issues which would render a class action difficult.

102. In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

<u>Causes of Action</u>

<u>First Cause of Action</u>
<u>Fair Labor Standards Act</u>
<u>(Against All Defendants)</u>
<u>(Collective Action Claim)</u>

103. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

104. The Plaintiffs and the other H-2A workers regularly worked more than 40 hours in a single work week.

105. Defendants willfully failed to pay Plaintiffs and the other H-2A workers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

106. Defendants' failure to pay an overtime premium for hours above 40 in a work week violated the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 17 of 24

107. The Plaintiffs and the other H-2B workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

108. The Plaintiffs and the other H-2A workers are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

109. The Plaintiffs and the other H-2A workers also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

Second Cause of Action
Missouri Overtime Law, Mo. Rev. Stat. § 290.500, <em>et seq.</em>
(Against All Defendants)
(Class Claim)

110. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

111. At all times material herein, Plaintiffs and other similarly situated employees – the other Class members – have been entitled to the rights, protections, and benefits provided under Mo. Rev. Stat. § 290.500, *et seq.* during the time that they worked in Missouri

112. Mo. Rev. Stat. § 290.505 regulates the payment of overtime compensation by Missouri employers.

113. Defendants are subject to the overtime pay requirements of Mo. Rev. Stat. § 290.505 because they are employers in the state of Missouri under Mo. Rev. Stat. § 290.500(4) and Plaintiffs and the Class members are employees under Mo. Rev. Stat. § 290.500(3).

114.   Defendants violated Mo. Rev. Stat. § 290.505 by failing to properly pay Plaintiffs and the other Class members for overtime during the time that they worked in Missouri.

115.   Plaintiffs and the other Class members are victims of an unlawful and entity-wide compensation policy. Defendants continues to apply and enforce this policy and thereby continues to violate Mo. Rev. Stat. § 290.505.

116.   Plaintiffs and the other Class members are entitled to damages equal to amount of unpaid overtime premium pay within at least the two years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard for the matter of whether its conduct was prohibited.

117.   Defendants acted in bad faith and without reasonable grounds to believe their actions and omissions were compliant with Mo. Rev. Stat. § 290.505. As a result thereof, Plaintiffs and the other Class members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above, pursuant to Mo. Rev. Stat. § 290.505.

118.   As a result of these willful violations of the wage and overtime provisions under Mo. Rev. Stat. § 290.505, Plaintiffs and the other Class Members are entitled to recover overtime compensation that have been unlawfully withheld by Defendants, together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of this action under Mo. Rev. Stat. § 290.527.

119.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

120.    Defendants are "employers" under K.S.A. § 44-313(a) because they are individuals or organizations that employed Plaintiffs and other Class Members in Kansas.

121.    Plaintiffs and other Class Members are "employees" under K.S.A. § 44-313(b) because Defendants allowed or permitted them to perform work in Kansas.

122.    Defendants failed to pay Plaintiffs and other Class Members all of the wages to which they were entitled under state and federal law for the time they worked in Kansas, in violation of K.S.A. § 44-314.

123.    Defendants' conduct in failing to properly compensate Plaintiffs and other Class Members was willful, because Defendants were aware of their obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe their actions were in compliance with those laws.

124.    Because Defendants' conduct was willful, Defendants are required to pay up to double the amount owed as wages to Plaintiffs and other Class Members, under K.S.A. § 44-315.

125.    Plaintiffs and other Class Members also are entitled to recover all other amounts allowed as damages under K.S.A. § 44-313, *et seq.*

Filing False Information Returns, 26 U.S.C. § 7434
(Class Claim)
(Against Briggs Traditional and Larry Briggs)

126.     The Plaintiffs reallege and incorporate by reference the foregoing allegations as if
          set forth fully here.

127.     Plaintiffs and other Class members bring claims pursuant to 26 U.S.C. § 7434
          against Briggs Traditional and Larry Briggs.

128.     As set forth in paragraphs 64 - 67, *supra*, in 2018, 2019, and 2020, the Defendants
          provided the IRS false information regarding Plaintiffs' and other H-2A workers'
          Social Security wages on IRS Form 941 and/or other information returns, in an
          attempt to defraud the IRS.

129.     Plaintiff and other Class members therefore are entitled, under 26 U.S.C.
          §7434(b), to recover the greater of either $5,000.00 for each false information
          return or damages Plaintiffs and other Class members sustained, the costs of this
          action, and reasonable attorney's fees.

130.     As required by 26 U.S.C. § 7434(d), Plaintiffs will provide a copy of this
          Complaint to the Internal Revenue Service.


Fifth Cause of Action
Alter Ego
(Against Briggs Traditional, Briggs Turf, and Larry Briggs)

131.     The Plaintiffs reallege and incorporate by reference the foregoing allegations as if
          set forth fully here.

132.     Defendants Briggs Traditional, Briggs Turf, and Larry Briggs ignored corporate
          formalities and used the corporate form to perpetuate fraud.

Case 4:21-cv-00374-FJG   Document 1   Filed 05/28/21   Page 21 of 24

133. The Defendants also used Briggs Traditional and Briggs Turf as a subterfuge to permit the Defendants to commit fraud on the federal and state government.

134. Allowing Defendant Larry Briggs to use Briggs Traditional and Briggs Turf to shield himself from personal liability and the business entities from joint and several liability for the violations of law they committed would work an injustice on Plaintiffs.

135. Plaintiffs therefore seek a declaratory judgment finding that Defendants Briggs Traditional, Briggs Turf, and Larry Briggs are alter egos of each other.

WHEREFORE, Plaintiffs request that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible H-2A workers who choose to do so to opt-in to this action;

c. certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

d. declaring that Defendants violated the FLSA, Missouri Overtime Law, the Kansas Wage Payment Act, and 26 U.S.C. § 7434(d) (filing false information returns);

e. declaring that Defendants Briggs Traditional, Briggs Turf, and Larry Briggs are alter egos of each other;

f.      permanently enjoining Defendants from further violations of the FLSA, Missouri Overtime Law, and the Kansas Wage Payment Act;

g.      granting judgment to Plaintiffs and other H-2A workers who opt in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

h.      granting judgment to Plaintiffs and other H-2A workers on their Missouri Overtime Law and Kansas Wage Payment Act claims and awarding them their unpaid wages and liquidated damages as provided for by statute;

i.      Awarding Plaintiffs and H-2A workers prejudgment and postjudgment interest as allowed by law;

j.      Awarding Plaintiffs and other H-2A workers their costs and reasonable attorneys' fees; and

k.      Granting such further relief as the Court finds just.

DATED:      Overland Park, Kansas
            May 28, 2021

**DUGAN SCHLOZMAN LLC**

*/s/ Heather Schlozman*
Heather Schlozman
Mark Dugan
8826 Santa Fe Drive, Suite 307
Overland Park, Kansas 66212
ph: 913-322-3528
fax: 913-904-0213
heather@duganschlozman.com
mark@duganschlozman.com

**RADFORD & KEEBAUGH, LLC**

Daniel Werner

Page 23 of 24

315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA 30030
(678) 271-0304
dan@decaturlegal.com
*(Pro hac vice petition forthcoming)*