**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

|  |  |
|---|---|
| JOSE ROBERTO RIOS-GUTIERREZ, JOSE JUAN MENDOZA-SERVIN, FRANCISCO JAVIER MARTINEZ-MENDEZ, JONATHAN RODRIGUEZ-ANAYA, and CESAR EDGARDO AVENDAÑO-MARTINEZ, *on behalf of themselves and all others similarly situated*, | **SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| *Plaintiffs,* | Civ. Action No.: 4:21-cv-00374-FJG |
| *v.* | |
| BRIGGS TRADITIONAL TURF FARM, INC.; L.C. BRIGGS TURF FARM, LLC; KENOSHA, LLC; NAUDI-D INVESTMENTS, LLC; LAWRENCE CLYDE BRIGGS, *individually and as sole trustee of his family trust*; and LAWRENCE CAPEN BRIGGS, | |
| *Defendants.* | |

Plaintiffs José Roberto Ríos-Gutiérrez, José Juan Mandoza-Servín, Francisco Javier Martínez-Méndez, Jonathan Rodriguez-Anaya, and Cesar Edgardo Avendaño-Martínez (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys Dugan Schlozman LLC and Radford & Keebaugh, LLC, as and for their Second Amended Complaint, allege as follows:

## I.    Preliminary Statement

1.    Defendants Briggs Traditional Turf Farm, Inc. ("Briggs Traditional"), L.C. Briggs Turf Farm, LLC ("Briggs Turf"), Kenosha, LLC ("Kenosha"); Naudi-D Investments, LLC ("Naudi-D Investments"); Lawrence Clyde Briggs ("Larry Briggs"), and Lawrence Capen Briggs ("Capen Briggs")[1] employed Plaintiffs and other Mexican nationals who came to the United States with H-2A temporary foreign worker visas during one or more seasons between 2018 and 2020.

2.    Though Defendants told Plaintiffs, other H-2A visa holders ("H-2A workers"), and the United States government that the H-2A workers would "work in fields" at the Defendants' sod farms in Missouri, the Defendants instead required the Plaintiffs and other H-2A workers to lay sod, seed, and perform other landscaping work at commercial, residential, and government properties in western Missouri and eastern Kansas.

3.    If Plaintiffs and the other H-2A workers had worked in agriculture the Defendants' sod farms, they would have been exempt from overtime premiums during those workweeks, and Defendants would not have been required to make payroll tax contributions for Social Security, Medicare, and unemployment.  Yet, as landscapers, Plaintiffs and the other H-2A workers should have been paid

[1] Defendants Lawrence Clyde Briggs and Lawrence Capen Briggs are not new parties in this action.  Rather, this Second Amended Complaint corrects their names.  The initial Complaint, ECF No. 1, and the First Amended Complaint, ECF No. 12, named (1) Defendant Lawrence Clyde Briggs as Lawrence "Larry" Briggs; and (2) Lawrence Capen Briggs as Capen Briggs. Both Lawrence Clyde Briggs and Lawrence Capen Briggs have referred to themselves as "Lawrence C. Briggs" in legal documents Plaintiffs relied upon when drafting the earlier pleadings.  It was only through deposition testimony that Plaintiffs ascertained the full legal names of these two Defendants.  Normally, Lawrence Clyde Briggs refers to himself as Larry Briggs, and Lawrence Capen Briggs refers to himself as Capen Briggs.

overtime *and* Defendants should have made these payroll tax contributions. During nearly every workweek—some of which exceeded 60 hours—the Defendants paid neither.

4. The Defendants also discriminated against the Plaintiffs and other H-2A workers based on their alienage. Defendants paid overtime premiums to and made payroll tax contributions on behalf of workers born in the United States who performed the same work.

5. Plaintiffs therefore bring this collective and class action seeking the overtime wages they are owed under the Fair Labor Standards Act ("FLSA") and state wage and hour law, as well as related liquidated and other damages. Plaintiffs and other H-2A workers also seek redress for Defendant Briggs Traditional's filing of false information returns. Plaintiffs and other H-2A workers also bring claims against the Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Finally, Plaintiffs and other H-2A workers bring claims under 42 U.S.C. § 1981 based on Defendants' discrimination against them based on the workers' alienage.

## II. Jurisdiction and Venue

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1337; 29 U.S.C. § 216(b) (the Fair Labor Standards Act); 26 U.S.C. § 7434 (false information returns); 18 U.S.C. § 1964 (RICO); and 42 U.S.C. § 1981 (alienage discrimination).

7. The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claims.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

9. Defendants reside and/or do business in this district.

### III. Parties

10. Named Plaintiff José Roberto Ríos-Gutiérrez came to Missouri from Mexico as an H-2A worker in 2018, 2019, and 2020 to work for the Defendants.

11. Mr. Ríos-Gutiérrez currently resides in Kansas, but he maintains his permanent residence in Mexico.

12. Named Plaintiff José Juan Mendoza-Servín came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

13. Mr. Mendoza-Servín currently resides in and maintains his permanent residence in Mexico.

14. Named Plaintiff Francisco Javier Martínez-Méndez came to Missouri from Mexico as an H-2A worker in 2018 and 2020 to work for the Defendants.

15. Mr. Martínez-Méndez currently resides in and maintains his permanent residence in Mexico.

16. Named Plaintiff Jonathan Rodríguez-Anaya came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

17. Mr. Rodríguez-Anaya currently resides in and maintains his permanent residence in Mexico.

18. Named Plaintiff César Edgardo Avendaño-Martínez came to Missouri from Mexico as an H-2A worker in 2019 and 2020 to work for the Defendants.

19. Mr. Avendaño-Martínez currently resides in and maintains his permanent residence in Mexico.

20. At all relevant times, Plaintiffs and the other H-2A workers were non-exempt employees of the Defendants within the meaning of the FLSA, Missouri law, and Kansas law.

21. At all relevant times, each Plaintiff and other H-2A worker was a "person" within the meaning of that term as defined by the RICO, in that each Plaintiff and other H-2A worker was an individual capable of holding a legal or beneficial interest in property. *See* 18 U.S.C. § 1961(3).

22. Each Plaintiff and other H-2A worker is a citizen of Mexico and is not a citizen of the United States.

23. Defendant Briggs Traditional is a for-profit Missouri corporation with its registered address at 22800 Shadow Glen Dr., P.O. Box 219, Peculiar, Missouri 64078 and its Principal Office Address at 23200 South Harper Road, Peculiar, Missouri 64078.

24. Briggs Traditional is a landscaping business that lays and maintains sod at businesses, homes, and government buildings in western Missouri and eastern Kansas.

25. Briggs Turf is a Missouri Limited Liability Company with its registered address at 23200 South Harper Road, Peculiar, Missouri 64078.

26. Briggs Turf operates farms for the purchase and sale of sod.

27. Defendant Kenosha is a Missouri Limited Liability Company with its registered agent address at 1000 Walnut Street, Suite 1500, Kansas City, Missouri 64106.

28. Kenosha's office is currently at the same location as the other Defendants' office: 23200 South Harper Road, Peculiar, Missouri 46078.

29. Defendants Larry Briggs and Capen Briggs are the two sole members of Kenosha.

30. Defendant Naudi-D Investments is a Missouri Limited Liability Company with its registered agent address at 1028 N. Kingshighway Street, Cape Girardeau, Missouri, 63701-3503.

31. Naudi-D Investment's office is currently at the same location as the other Defendants' office: 23200 South Harper Road, Peculiar, Missouri 46078.

32. Defendant Larry Briggs resides in Cass County, Missouri.

33. Defendant Larry Briggs is one of two members of Defendant Briggs Turf.

34. At all relevant times, Defendant Larry Briggs directed the operations of Defendant Briggs Turf.

35. Defendant Larry Briggs exercised control over Plaintiffs' and other H-2A workers' work.

36. Larry Briggs is sued individually and as sole trustee of a family trust.[2]

---

[2] During his December 1, 2021 deposition testimony, Larry Briggs did not recall the name of the family trust. Plaintiffs have requested that Larry Briggs provide the trust documents.

37. Upon information and belief, Defendant Larry Briggs, as sole trustee of a family trust, holds title to all but one of the properties where Briggs Turf and/or Briggs Traditional grow sod. Defendant Kenosha holds title to the remaining property.

38. Defendant Larry Briggs is one of two members Kenosha.

39. Defendant Lawrence Capen Briggs is the Director, President, and Secretary of Defendant Briggs Traditional.

40. At all relevant times, Defendant Capen Briggs managed and supervised the operations of Defendant Briggs Traditional.

41. Defendant Capen Briggs exercised control over Plaintiffs' and other H-2A workers' work, directly and indirectly.

42. Defendant Capen Briggs had the power to establish, and did establish, the Plaintiffs' and other H-2A workers' terms of employment.

43. Defendant Capen Briggs had the power to hire and fire Plaintiffs and other H-2A workers.

44. Defendant Capen Briggs exercised operational control over significant aspects of the day-to-day functions of Defendant Briggs Traditional.

45. Defendant Capen Briggs signed the state and federal government documents to secure H-2A visas for Plaintiffs and the other H-2A workers. These documents set forth the terms and conditions of Plaintiffs' and the other H-2A workers' employment with Defendants, including the wage rates, the type of work, and the work hours.

46. Defendants are an enterprise engaged in commerce or in the production of goods for commerce.

47. Upon information and belief, Defendants have a gross volume of sales made or business done of not less than $500,000 per year.

48. At all relevant times, each Defendant was an "employer" of Plaintiffs and the other H-2A workers within the meaning of the FLSA, Missouri law, and Kansas law.

49. Landscaping companies, as well as owners of commercial, residential, and government properties hired Briggs Turf to install sod, spread seed, and perform other landscaping work on these properties. Briggs Turf claims it then contracted Briggs Traditional to employ the laborers, including the Plaintiffs and other H-2A workers, to perform this work. Some of the same customers, however, also hired Briggs Traditional to perform the same work.

50. At all relevant times, Defendants were a single employer of Plaintiffs and other H-2A workers in that

    a. Their operations were interrelated;

    b. They centrally controlled labor relations;

    c. They had common management; and

    d. They had common ownership.

51. Defendants are "persons" within the meaning of that term as defined by the federal RICO, in that they were individuals or entities capable of holding a legal or beneficial interest in property. *See* 18 U.S.C. § 1961(3).

52. At all relevant times, Plaintiffs and the other H-2A workers were "employees" of the Defendants within the meaning of the FLSA, Missouri law, and Kansas law.

53. At all relevant times, Defendants "employed" Plaintiffs and other H-2A workers within the meaning of the FLSA, Missouri law, and Kansas law.

54. Plaintiffs have consented in writing to become party Plaintiffs in this action. *See* Collective and Class Action Complaint, Consents to Sue, Exs. 1-5, CM/ECF Nos. 1-2 through 1-6.

### IV. The RICO Enterprises

55. Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments were an enterprise ("RICO Enterprise I") within the meaning of that term as defined by the RICO in that they were associated in fact though not a legal enterprise. *See* 18 U.S.C. § 1961(4).

56. The Defendants associated with RICO Enterprise I were Larry Briggs and Capen Briggs.

57. Briggs Traditional, Briggs Turf, Kenosha, Naudi-D Investments, and MAS Labor H-2A, LLC[33] were an enterprise ("RICO Enterprise II") within the meaning of that term as defined by the RICO in that they were associated in fact though not a legal enterprise. *See* 18 U.S.C. § 1961(4).

58. All Defendants were associated with RICO Enterprise II.

59. Alternatively, the Defendants associated with RICO Enterprise II were Larry Briggs and Capen Briggs.

---

[33] MAS Labor H-2A, LLC ("MAS Labor") describes itself on its website as "a business-to-business consulting firm dedicated to assisting employers with the federal H-2A (agricultural) and H-2B (non-agricultural) non-immigrant visa programs." MasLabor: The H2 Labor Specialists: About Us, https://maslabor.com/corp/#mas-maslabor-our-story (last reviewed September 7, 2021). MAS Labor assisted Defendants with the government filings to employ H-2A workers in 2018 through 2021.

## V. Statutory and Regulatory Structure of the H-2A Program

60. Only "an alien … who is coming temporarily to the United States to perform agricultural labor or services … of a temporary or seasonal nature…." is eligible to receive and H-2A visa.  *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

61. "Agricultural labor or services" in turn is defined in the Internal Revenue Code, 26 U.S.C. § 3121(g) and the FLSA, 29 U.S.C. § 203(f), as well as in implementing regulations.

62. Laying sod, planting grass seed, and spreading straw at commercial, residential, and government properties are not "agricultural labor or services."

63. Preparing commercial, residential, and government properties—such as grading, moving rocks, removing trash, and placing soil—to lay sod, plant grass seed, or spread straw is not "agricultural labor or services."

64. Laying sod at commercial, residential, and government properties is not "agricultural labor or services" when the sod was not grown at farms owned or operated by the employer(s).

65. Planting grass seed and spreading straw at commercial, residential, and government properties, and preparing the properties for planting grass seed and spreading straw, are not "agricultural labor or services" when the seed and straw were not grown at farms owned or operated by the employer(s).

66. An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the

wages and working conditions of U.S. workers who are similarly employed. These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

67. Under the H-2A program, employers must file a temporary labor certification application (Form ETA 9142A) with the USDOL's Employment and Training Administration. *See* 20 C.F.R. § 655.130.

68. The employer or the employer's agent must indicate on the Form ETA 9142A the Standard Occupational Classification ("SOC") Occupational Code and the SOC Occupational Title for the work the H-2A workers are to perform.

69. The employer filing a temporary labor certification application also must sign an attestation (Form ETA 9142A, Appendix A) declaring, under penalty of perjury, that

> I have read and reviewed this application, including every page of the Form ETA-9142A, Form ETA790/790A, and supporting documentation, and that to the best of my knowledge the information contained therein is true and accurate. I understand that to knowingly and/or willfully furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both.

70. The application must include a job offer, known as a "Job Order," (ETA Form 790) which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers.

71. Among other things, the Job Order must provide an accurate description of the work location, the work to be performed, and the work requirements.

72. The employer submits the Job Order to the State Workforce Agency ("SWA") in the state where the work will be performed.

73. In Missouri, the SWA is the Missouri Office of Workforce Development ("MOWD").

74. If an employer's Job Order appears to meet the minimum federal regulatory requirements and otherwise appears valid, the SWA approves the Job Order, and U.S. worker availability is tested by use of the interstate Employment Service system and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

75. The Job Order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly employed U.S. workers.

## VI. Statement of Facts

### Unpaid Overtime

76. As is evident from Briggs Traditional's payroll records, Plaintiffs and other H-2A workers regularly worked more than 40 hours per week. However, the Defendants did not pay an overtime premium of time and one half of their regular hourly pay rate for their hours above forty, with the rare exception of workweeks when the Plaintiffs and other H-2A workers worked at union jobsites.

77. For example, for the week ending June 23, 2019, Plaintiff Avendaño-Martínez worked 50.44 hours but was not paid an overtime premium; the week ending May 3, 2020, Plaintiff Rios-Gutierrez worked 56.6 hours but was not paid an overtime

premium; and the week ending October 4, 2020, Plaintiff Martinez-Mendez worked 64.35 hours but was not paid an overtime premium.

78. Upon information and belief, Defendants intentionally misclassified Plaintiffs and other H-2A workers as agricultural workers in part to avoid paying overtime premiums.

79. Defendants paid overtime premiums to U.S. citizen employees who were performing the same work.

<u>Racketeering</u>

80. The acts and omissions described herein were committed by the indicated Defendant or Defendants through their respective RICO Enterprises, as described in ¶¶ 55-59, *supra.*

*The 2018 Season*

81. Before 2018, the Defendants brought foreign workers to work in their landscaping operations through the H-2B visa program.[4] The H-2B program is for non-agricultural temporary or seasonal work. Landscapers employed through the H-2B program would have been eligible for overtime premiums. Defendants paid the required overtime premiums to their H-2B workers before the 2018 season.

82. In 2018, the Defendants switched from employing landscapers under the H-2B program to employing them under the H-2A visa program. As set forth above (¶¶ 60-61) the H-2A program is for seasonal agricultural labor. To qualify for the H-

---

[4] In 2017, Defendants applied to bring H-2B workers to work at their landscaping operations. However, the H-2B program has a national cap on the number of visas the government issues. Defendants were not able to employ H-2B workers in 2017 because the national cap had been reached.

2A visa program, the Defendants falsely told federal and state government authorities that the workers would be doing agricultural field work. However, the Defendants knew the H-2A workers would be working as landscapers, which is not considered agricultural labor under federal H-2A visa regulations. The Defendants also stopped paying overtime premiums to their foreign landscapers, with limited exceptions for rare work assignments at union jobsites.

83. On or about February 16, 2018, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2018 Job Order) to Missouri's Department of Economic Development ("MDED"); and an Application for Temporary Employment Certification (hereinafter, "the 2018 Application for Certification") to the USDOL.

84. On or about February 16, 2018, Defendant Capen Briggs signed the "Employer's Certification" in the 2018 Job Order.

85. The "Employer's Certification" certified that the 2018 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

86. The 2018 Job Order (attached as Ex. A):

    a. Lists six work sites (Ex. A, Item 2). All six work sites are sod farms. At the time Defendants submitted the 2018 Job Order, they knew Plaintiffs and other H-2A workers would not be working at the sod farms, but rather would be working as landscapers throughout the Kansas City metropolitan area in Missouri and Kansas.

b. Indicates the "Anticipated Hours of Work per Week" would be 40 (Ex. A, Item 11). At the time the Defendants submitted the 2018 Job Order, they knew Plaintiffs and other H-2A workers regularly would work far more than 40 hours per week.

c. Indicates the job requires "3 months of commercial agricultural field work experience, preferably working on a commercial sod farm handling both manual and mechanized tasks including field crop production and harvesting activities associated with production of sod." (Ex. A, Item 16). At the time the Defendants submitted the 2018 Job Order, they knew Plaintiffs and other H-2A workers would not be working on a commercial sod farm in field crop production and harvesting activities.

d. Describes the job as "work in fields" and indicates "work is done in the field for long periods of time." It then describes work duties associated with the production and harvesting of sod (Ex. A, Item 16). At the time the Defendants submitted the 2018 Job Order, they knew Plaintiffs and other H-2A workers would not be performing work in fields associated with the production and harvesting of sod.

e. Indicates "[a]gricultural work is exempt from federal overtime requirements pursuant to 29 USC§ 213(a)(6)" and did not indicate any overtime premiums would be paid (Ex. A, Items 16 & 17). At the time the Defendants submitted the 2018 Job Order, they knew Plaintiffs and

other H-2A workers would not be performing overtime-exempt agricultural work.

    f.   Indicates "[a]ll hours worked will be engaged in sod production." (Ex. A, Item 12). At the time the Defendants submitted the 2018 Job Order, they knew Plaintiffs and other H-2A workers would not be engaged in sod production.

87.    In reliance on Defendant Capen Briggs's certification, the MDED approved the 2018 Job Order.

88.    The approved 2018 Job Order included, but was not limited to, the terms set forth in paragraph 86, *supra.*

89.    Upon information and belief, on or about February 16, 2018, Defendant Capen Briggs signed Form ETA 9142A, Appendix A of the 2018 Application for Certification, wherein he declared, under penalty of perjury, that Briggs Traditional would "comply with Federal, State, and Local employment-related laws and regulations." At the time Defendants submitted the 2018 9142A, Appendix A, they knew they would not comply with the FLSA's overtime requirements.

90.    USDOL reviewed and, in reliance on Defendant Capen Briggs's attestation, ultimately certified Briggs Traditional's 2018 Application for Certification, allowing Briggs Traditional to import H-2A workers, including Plaintiffs, to fill the labor needs set out in their temporary labor certification application.

91. Defendants used the mail and/or wires to transmit the 2018 Application for Certification, the 2018 Job Order, and related materials between themselves, their agents, MDED, and USDOL.

92. Defendants used the mail and/or wires in furtherance of their scheme to provide this false information to MDED and USDOL in 2018.

*The 2019 Season*

93. On or about January 28, 2019, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2019 Job Order") to the MDED and an Application for Temporary Employment Certification (hereinafter, "the 2019 Application for Certification") to the USDOL.

94. On or about January 28, 2019, Defendant Capen Briggs signed the "Employer's Certification" in the 2019 Job Order.

95. The "Employer's Certification" certified that the 2019 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

96. The 2019 Job Order (attached as Ex. B):

    a. Lists five work sites (Ex. B, Item 2). Upon information and belief, all six work sites are sod farms. At the time Defendants submitted the 2019 Job Order, they knew Plaintiffs and other H-2A workers would not be working at the sod farms, but rather would be working as landscapers throughout the Kansas City metropolitan area in Missouri and Kansas.

b. Indicates the "Anticipated Hours of Work per Week" would be 40 (Ex. B, Item 11). At the time the Defendants submitted the 2019 Job Order, they knew Plaintiffs and other H-2A workers regularly would work far more than 40 hours per week.

c. Indicates the job requires "3 months of commercial agricultural field work experience, preferably working on a commercial sod farm handling both manual and mechanized tasks including field crop production and harvesting activities associated with production of sod." (Ex. B, Item 16). At the time the Defendants submitted the 2019 Job Order, they knew Plaintiffs and other H-2A workers would not be working on a commercial sod farm in field crop production and harvesting activities.

d. Describes the job as "work in fields" and indicates "work is done in the field for long periods of time." It then describes work duties associated with the production and harvesting of sod (Ex. B, Item 16). At the time the Defendants submitted the 2019 Job Order, they knew Plaintiffs and other H-2A workers would not be performing work in fields associated with the production and harvesting of sod.

e. Indicates "[a]gricultural work is exempt from federal overtime requirements pursuant to 29 USC§ 213(a)(6)" and did not indicate any overtime premiums would be paid (Ex. B, Items 16 & 17). At the time the Defendants submitted the 2019 Job Order, they knew Plaintiffs and

other H-2A workers would not be performing overtime-exempt agricultural work.

    f.   Indicates "[a]ll hours worked will be engaged in sod production." (Ex. B, Item 12). At the time the Defendants submitted the 2019 Job Order, they knew Plaintiffs and other H-2A workers would not be engaged in sod production.

97. In a January 28, 2019 letter to Joyce Hahn of the Missouri Department of Economic Development, Elizabeth D. Whitley, President of MAS Labor H2A, LLC, in her capacity as Defendants' agent, enclosed the 2019 Job Order and stated Briggs Traditional "is seeking workers to fill the position of Sod Farm Worker (OES code 45-2092.02).[5] The nature of the employer's business is sod farm (NAICS code 111421 Nursery and Tree Production).[6]" At the time Ms.

---

[5] OES is an abbreviation for Occupational Employment Statistics compiled by the U.S. Bureau of Labor Statistics. Code 45-2092.02 is the designation for "Farmworker and Laborers, Crop." This is defined as

> Manually plant, cultivate, and harvest vegetables, fruits, nuts and field crops. Use hand tools, such as shovels, trowels, hoes, tampers, pruning hooks, shears, and knives. Duties may include tilling soil and applying fertilizers; transplanting, weeding, thinning, or pruning crops; applying pesticides; cleaning, packing, and loading harvested products. May construct trellises, repair fences and farm buildings, or participate in irrigation activities.

*See* FLC Wage Results, Foreign Labor Certification Data Center, https://www.flcdatacenter.com/OesQuickResults.aspx?area=1300004&code=45-2092&year=13&source=1 (last reviewed Sept. 7, 2021).

[6] NAICS is an abbreviation for the North American Industry Classification System, which was developed by the U.S. Office of Management and Budget. Code 111421 is the designation for "Nursery and Tree Production." According to the U.S. Census Bureau,

> this U.S. industry comprises establishments primarily engaged in (1) growing nursery products, nursery stock, shrubbery, bulbs, fruit stock, sod, and so forth,

Whitley signed this letter acting as Defendants' agent, Defendants knew Plaintiffs and other H-2A workers would not be filling positions as sod farm workers on a sod farm.

98. In reliance on Defendant Capen Briggs's certification and Ms. Whitley's letter, the MDED approved the 2019 Job Order.

99. The approved 2019 Job Order included, but was not limited to, the terms set forth in paragraph 96, *supra.*

100. On or about January 28, 2019, Defendant Capen Briggs signed Form ETA 9142A, Appendix A of the 2019 Application for Certification, wherein he declared, under penalty of perjury, that Briggs Traditional would "comply with Federal, State, and Local employment-related laws and regulations." At the time Defendants submitted the 2019 9142A, Appendix A, they knew they would not comply with the FLSA's overtime requirements.

101. USDOL reviewed and, in reliance on Defendant Capen Briggs's attestation, ultimately certified Briggs Traditional's 2019 Application for Certification, allowing Briggs Traditional to import H-2A workers, including Plaintiffs, to fill the labor needs set out in their temporary labor certification application.

---

under cover or in open fields and/or (2) growing short rotation woody trees with a growth and harvest cycle of 10 years or less for pulp or tree stock.

*See* North American Industry Classification System, U.S. Census Bureau, https://www.census.gov/eos/www/naics/reference_files_tools/1997/sec11.htm (last reviewed Sept. 7, 2021).

102. Defendants used the mail and/or wires to transmit the 2019 Application for Certification, the 2019 Job Order, and related materials between themselves, their agents, MOWD, and USDOL.

103. Defendants used the mail and/or wires in furtherance of their scheme to provide this false information to MOWD and USDOL in 2019.

*The 2020 Season*

104. On or about February 7, 2020, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2020 Job Order) to the MDED; and an Application for Temporary Employment Certification (hereinafter, "the 2020 Application for Certification") to the USDOL.

105. On or about February 7, 2020, Defendant Capen Briggs electronically signed the "Employer's Certification" in the 2020 Job Order.

106. The "Employer's Certification" certified that the 2020 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

107. The 2020 Job Order (attached as Ex. C):

    a. Lists five work sites (Ex. C, Section C). Upon information and belief, all six work sites are sod farms. At the time Defendants submitted the 2020 Job Order, they knew Plaintiffs and other H-2A workers would not be working at the sod farms, but rather would be working as landscapers throughout the Kansas City metropolitan area in Missouri and Kansas.

b. Indicates the "Anticipated Hours of Work per Week" would be 40 (Ex. C, Section A(6)). At the time the Defendants submitted the 2020 Job Order, they knew Plaintiffs and other H-2A workers regularly would work far more than 40 hours per week.

c. Indicates the job requires "3 months of commercial agricultural field work experience, preferably working on a commercial sod farm handling both manual and mechanized tasks including field crop production and harvesting activities associated with production of sod." (Ex. C, Section H(c)(3)). At the time the Defendants submitted the 2020 Job Order, they knew Plaintiffs and other H-2A workers would not be working on a commercial sod farm in field crop production and harvesting activities.

d. Describes the job as "work in fields" and indicates "work is done in the field for long periods of time." It then describes work duties associated with the production and harvesting of sod (Ex. C, Section H(a)(3)). At the time the Defendants submitted the 2020 Job Order, they knew Plaintiffs and other H-2A workers would not be performing work in fields associated with the production and harvesting of sod.

108. In reliance on Defendant Capen Briggs's certification, the MDED approved the 2020 Job Order.

109. The approved 2020 Job Order included, but was not limited to, the terms set forth in paragraph 107, *supra.*

110. On or about January 28, 2020, Defendant Capen Briggs signed or electronically signed Form ETA 9142A, Appendix A of the 2020 Application for Certification, wherein he declared, under penalty of perjury, that Briggs Traditional would "comply with Federal, State, and Local employment-related laws and regulations." At the time Defendants submitted the 2020 9142A, Appendix A, they knew they would not comply with the FLSA's overtime requirements.

111. USDOL reviewed and, in reliance on Defendant Capen Briggs's attestation, ultimately certified Briggs Traditional's 2020 Application for Certification, allowing Briggs Traditional to import H-2A workers, including Plaintiffs, to fill the labor needs set out in their temporary labor certification application.

112. Defendants used the mail and/or wires to transmit the 2020 Application for Certification, the 2020 Job Order, and related materials between themselves, their agents, MDED, and USDOL.

113. Defendants used the mail and/or wires in furtherance of their scheme to provide this false information to MDED and USDOL in 2020.

*The 2021 Season*

114. On or about January 19, 2021, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2021 Job Order) to the MDED; and an Application for Temporary Employment Certification (hereinafter, "the 2021 Application for Certification") to the USDOL.

115. On or about January 19, 2021, Defendant Capen Briggs electronically signed the "Employer's Certification" in the 2021 Job Order.

116. The "Employer's Certification" certified that the 2021 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

117. The 2021 Job Order (attached as Ex. D):

    a. Lists eight work sites in Peculiar, Missouri (Ex. D, Section C). Upon information and belief, all eight work sites in Peculiar are sod farms. It also lists seven work sites as "Various locations" in Missouri and Kansas. At the time Defendants submitted the 2021 Job Order, they knew Plaintiffs and other H-2A workers would not be working at the listed sod farm work sites, but rather would be working as landscapers throughout the Kansas City metropolitan area in Missouri and Kansas.

    b. Indicates the "Anticipated Hours of Work per Week" would be 40 (Ex. D, Section A(6)). At the time the Defendants submitted the 2021 Job Order, they knew Plaintiffs and other H-2A workers regularly would work far more than 40 hours per week.

    c. Indicates the job requires "3 months of commercial agricultural field work experience, preferably working on a commercial sod farm handling both manual and mechanized tasks including field crop production and harvesting activities associated with production of sod." (Ex. D, Section H(a)(3)). At the time the Defendants submitted the 2021 Job Order, they knew Plaintiffs and other H-2A workers would not be working on a commercial sod farm in field crop production and harvesting activities.

d. Describes the job as "work in fields" and indicates "work is done in the field for long periods of time." It then describes work duties associated with the production and harvesting of sod (Ex. D, Section H(a)(3)). At the time the Defendants submitted the 2021 Job Order, they knew Plaintiffs and other H-2A workers would not be performing work in fields associated with the production and harvesting of sod.

118. In reliance on Defendant Capen Briggs's certification, the MDED approved the 2021 Job Order.

119. The approved 2021 Job Order included, but was not limited to, the terms set forth in paragraph 117, *supra.*

120. On or about January 28, 2020, Defendant Capen Briggs signed or electronically signed Form ETA 9142A, Appendix A of the 2021 Application for Certification, wherein he declared, under penalty of perjury, that Briggs Traditional would "comply with Federal, State, and Local employment-related laws and regulations." At the time Defendants submitted the 2021 9142A, Appendix A, they knew they would not comply with the FLSA's overtime requirements.

121. USDOL reviewed and, in reliance on Defendant Capen Briggs's attestation, ultimately certified Briggs Traditional's 2021 Application for Certification, allowing Briggs Traditional to import H-2A workers, including Plaintiffs, to fill the labor needs set out in their temporary labor certification application.

122. Defendants used the mail and/or wires to transmit the 2021 Application for Certification, the 2020 Job Order, and related materials between themselves, their agents, MDED, and USDOL.

123. Defendants used the mail and/or wires in furtherance of their scheme to provide this false information to MDED and USDOL in 2020.

Filing False Information Returns with the U.S. Internal Revenue Service

124. Under federal law, employers are not required to pay the employer's share of Social Security, Medicaid, and unemployment taxes to the U.S. Internal Revenue Service ("IRS") for workers employed with H-2A visas.

125. However, Defendants intentionally misclassified the Plaintiffs and other H-2A workers as agricultural workers to secure their H-2A visas.

126. Defendants knew Plaintiffs and other H-2A workers would not be employed in agriculture and therefore were not properly classified as H-2A workers.

127. Upon information and belief, in an attempt to defraud the IRS, Defendant knowingly misrepresented the Plaintiffs' and other H-2A workers' taxable Social Security wages in quarterly IRS Form 941s and/or other information returns Defendants filed with the IRS in 2018, 2019, 2020, and 2021.

Employment Discrimination Claims

128. Plaintiffs and other H-2A workers are citizens of Mexico.

129. Plaintiffs and other H-2A workers are not citizens of the United States.

130. At all relevant times, Defendants employed U.S. citizen workers who performed the same work as the Plaintiffs and other H-2A workers.

131. Defendants paid overtime premiums to their U.S. citizen employees when they worked over 40 hours in a workweek.

132. Defendants did not pay overtime premiums to their H-2A workers when they worked over 40 hours in a workweek, with the rare exception of when the H-2A workers performed work at a union jobsite.

133. Defendants' disparate treatment of the H-2A workers as compared to Defendants' U.S. citizen workers who performed the same work constituted discrimination based on alienage, in violation of 42 U.S.C. § 1981.

Alter-Ego Claims

134. Defendants Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments served as mere alter egos of each other and of Defendants Larry Briggs and Capen Briggs.

135. Upon information and belief, Defendants Briggs Traditional, Briggs Turf, Kenosha, Naudi-D Investments, Larry Briggs, and Capen Briggs ignored corporate formalities and used the corporate form to perpetuate fraud (a) by co-mingling their assets; (b) by falsely indicating to the federal and state government that Plaintiffs would work on farms, which were owned by Larry Briggs as sole trustee of a family trust, or by Kenosha, rather than laying sod and performing other landscaping on commercial, residential, and government properties throughout western Missouri and eastern Kansas, in direct contravention of federal law; and (c) by using Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments as vehicles to defraud the federal and state government.

136. Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments shared office space, office equipment, storage space, and employees with no or below-market compensation between them for the use of these facilities and employees.

137. On or about January 1, 2015, Defendants Capen Briggs and Larry Briggs signed a "Lease Agreement" on behalf of Briggs Traditional and Briggs Turf, respectively, by which "Lessor" Briggs Traditional would lease certain farm properties to "Lessee" Briggs Turf for the purpose of growing and harvesting sod.

138. Though Briggs Turf is identified in the "Lease Agreement" as the lessee, Briggs Traditional has claimed in deposition testimony it leased farms *from* Briggs Turf and issued payments therefor.

139. The "Lease Agreement" did not indicate the amount of rent Brigs Turf would pay to Briggs Traditional.

140. This "Lease Agreement" was for a period of one year, but would be "extended indefinitely" by mutual agreement of the parties. Further, Lessee Briggs Turf would be able to unilaterally renew the "Lease Agreement" in one-year increments upon written notice to Lessor Briggs Traditional.

141. Upon information and belief, Briggs Turf never renewed the "Lease Agreement" in writing.

142. From January 1, 2015 to the present, Briggs Traditional has not owned any sod farm or other real property. As such, Briggs Traditional has owned no land to lease to Briggs Turf.

143. From January 1, 2015 to the present, Briggs Turf also has not owned any sod farm or other real property. Rather, Defendant Larry Briggs, as sole trustee of a family trust, owns sod farms used by Briggs Turf and possibly by Briggs Traditional.

144. Neither Briggs Turf nor Briggs Traditional leased from or paid consideration to Larry Briggs, as sole trustee of a family trust, for the use the land he owns.

145. Elizabeth Francis Mainard manages the office shared by all of the Defendants. Larry Briggs describes Ms. Mainard as the "kingpin of our business." Though Ms. Mainard performs work for all of the Defendants, she receives wages only from Briggs Traditional. The other Defendants do not reimburse Briggs Traditional for work Ms. Mainard performs on the other Defendants' behalf.

146. Landscaping companies, as well as owners of commercial, residential, and government properties hired Briggs Turf to install sod, spread seed, and perform other landscaping work on these properties. Briggs Turf claims it then contracted Briggs Traditional to employ the laborers, including the Plaintiffs and other H-2A workers, to perform this work. Some of the same customers, however, also hired Briggs Traditional to perform the same work.

147. Business transacted between the Defendants was not at arms' length.

148. Defendant Capen Briggs used Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments as a subterfuge to commit fraud.

149. Allowing Defendants Larry Briggs and Capen Briggs to use Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments to shield themselves from personal liability and the business entities from joint and several liability for the violations of law they committed would work an injustice on Plaintiffs.

<u>Other Allegations</u>

150. Defendant undertook all of the actions and omissions alleged above either directly or through its agents who were authorized to undertake such actions and omissions.

151. The actions and omissions alleged above were willful in that Defendant was aware of its obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe its actions were in compliance with those laws.

<u>FLSA Collective Allegations</u>

152. Plaintiffs bring their FLSA claims on behalf of themselves and those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required overtime wages at Defendants' operations between May 28, 2018 and the date of preliminary approval of the opt-in class.

153. Plaintiffs and other H-2A workers were subject to the same policies and practices of Defendants.

154. Common proof applicable to Plaintiffs and the other H-2A workers will show that the Defendants failed to properly pay overtime wages to Plaintiffs and other H-2A workers.

155. Plaintiffs are currently unaware of the identities of all the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from the Defendants' records. The Defendants therefore should be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who were H-2A workers for Defendants between May 28, 2018 and the present.

<u>Rule 23 Class Allegations</u>

156. The Plaintiffs bring their false information return, their employment discrimination claims under 42 U.S.C. § 1981, and their state law claims – the Second, Third, and Fourth, Fifth, and Sixth Causes of Action– on behalf of themselves and a class of persons ("the Class") consisting of:

> All individuals who, between May 28, 2017 and the present, (1) received wages from Defendant Briggs Traditional; (2) performed non-agricultural work in any workweek(s); and (3) were H-2A visa holders.

157. Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the class period has had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Class.

<em>Numerosity</em>

158. There are over 40 H-2A workers who would be members of the Class in this action.

159. The members of the Class are sufficiently numerous that joinder of all members is impractical.

<em>Existence and Predominance of Common Questions</em>

160. Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual Class members.

161. These common questions include:

Page 31 of 49

a) Whether Defendants failed to pay Plaintiffs and the Class members at a rate of time and one half of their regular rate of pay for all hours worked over 40 in a work week, in violation of Missouri and Kansas law;

b) Whether Defendants had a policy of failing to pay Plaintiffs and the other H-2A workers as required by law;

c) Whether Defendants' policy of failing to pay Plaintiffs and the other H-2A workers was willful;

d) Whether Defendants, through RICO Enterprises I and/or II, committed a pattern of racketeering activity causing Plaintiffs and other H-2A workers to suffer pecuniary losses;

e) Whether Defendants discriminated against Plaintiffs and other H-2A workers by only paying overtime premiums to U.S. citizen workers (with the rare exception of when the H-2A workers performed work at union jobsites).

f) Whether Defendants filed false information returns with the IRS with respect to the Plaintiffs' and other H-2A workers' wages;

g) Whether Defendant Briggs Traditional, Briggs Turf, Kenosha, Naudi-D Investments, Capen Briggs, and Larry Briggs are alter egos of each other; and

h) The nature and extent of class-wide injury and the measure of damages for those injuries.

*Typicality*

162. Members of the proposed Class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

163. Plaintiffs and the proposed class members have the same statutory rights under the Missouri and Kansas wage payment laws and are all non-exempt employees within the meaning of these laws.

164. Plaintiffs and the proposed class members performed the same type of work under the same circumstances giving rise to the same claims.

165. Plaintiffs and proposed class members suffered similar types of damages.

166. Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were employees who worked for the Defendants and suffered the same violations as the proposed class members.

167. Defendants' practices with respect to informational returns submitted to the IRS were the same with respect to Plaintiffs and the Class members.

168. Defendants' discriminatory practices in violation of 42 U.S.C. § 1981 were the same with respect to Plaintiffs and the Class members.

169. Plaintiffs' interests are co-extensive with the interests of the Class members; Plaintiffs have no interest adverse to the Class members.

*Adequacy*

170. Plaintiffs will fairly and adequately represent the interests of the class members. Their interests do not conflict with the interests of the members of the Class they seek to represent.

171. Plaintiffs understand that, as Class representatives, they assume a responsibility to the class to represent its interests fairly and adequately.

172. Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters.  There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

*Superiority*

173. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

174. The damages suffered by each individual Class member may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual prosecution of the litigation necessitated by Defendants' conduct.

175. Further, it would be difficult for members of the Class to obtain individual redress effectively for the wrongs done to them.   If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendants.

176. The members of the Class are indigent foreign nationals and migrant workers who lack the means and resources to secure individual legal assistance, have virtually no command of the English language or familiarity with the United States legal system, and are particularly unlikely to be aware of their rights to prosecute these claims.

177. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

178. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

179. This case does not present individualized factual or legal issues which would render a class action difficult.

180. In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

# VII.    Causes of Action

First Cause of Action
Fair Labor Standards Act
(Against All Defendants)
(Collective Action Claim)

181. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

182. This count sets forth a claim by Plaintiffs, and by all similarly situated workers who opt into this action pursuant to 29 U.S.C. § 216(b), for damages resulting from all Defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 & 207.

183. The Plaintiffs and the other H-2A workers regularly worked more than 40 hours in a single work week.

184. Defendants willfully failed to pay Plaintiffs and the other H-2A workers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

185. Defendants' failure to pay an overtime premium for hours above 40 in a work week violated the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

186. The Plaintiffs and the other H-2B workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

187. The Plaintiffs and the other H-2A workers are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

188. The Plaintiffs and the other H-2A workers also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

<u>Second Cause of Action</u>
<u>Missouri Overtime Law, Mo. Rev. Stat. § 290.500, *et seq.*</u>
<u>(Against All Defendants)</u>
<u>(Class Claim)</u>

189. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

190. This Count sets for claims by Plaintiffs and other Class members against all Defendants for damages resulting from Defendants' violations of the Missouri Overtime Law, Mo. Rev. Stat. § 290.500, et seq.

191. At all times material herein, Plaintiffs and other similarly situated employees – the other Class members – have been entitled to the rights, protections, and benefits provided under Mo. Rev. Stat. § 290.500, *et seq.* during the time that they worked in Missouri.

192. Mo. Rev. Stat. § 290.505 regulates the payment of overtime compensation by Missouri employers.

193. Defendants are subject to the overtime pay requirements of Mo. Rev. Stat. § 290.505 because they are employers in the state of Missouri under Mo. Rev. Stat. § 290.500(4) and Plaintiffs and the Class members are employees under Mo. Rev. Stat. § 290.500(3).

194. Defendants violated Mo. Rev. Stat. § 290.505 by failing to properly pay Plaintiffs and the other Class members for overtime during the time that they worked in Missouri.

195. Plaintiffs and the other Class members are victims of an unlawful and entity-wide compensation policy. Defendants continues to apply and enforce this policy and thereby continues to violate Mo. Rev. Stat. § 290.505.

196. Plaintiffs and the other Class members are entitled to damages equal to amount of unpaid overtime premium pay within at least the two years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard for the matter of whether its conduct was prohibited.

197. Defendants acted in bad faith and without reasonable grounds to believe their actions and omissions were compliant with Mo. Rev. Stat. § 290.505. As a result thereof, Plaintiffs and the other Class members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above, pursuant to Mo. Rev. Stat. § 290.505.

198. As a result of these willful violations of the wage and overtime provisions under Mo. Rev. Stat. § 290.505, Plaintiffs and the other Class Members are entitled to recover overtime compensation that have been unlawfully withheld by Defendants, together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of this action under Mo. Rev. Stat. § 290.527.

<u>Third Cause of Action</u>
<u>Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*</u>
<u>(Against All Defendants)</u>
<u>(Class Claim)</u>

199. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

200. This Count sets for claims by Plaintiffs and other Class members against all Defendants for damages resulting from Defendants' violations of the Kansas Wage Payment Act, Mo. Rev. Stat. § 44-313, et seq.

201. Defendants are "employers" under K.S.A. § 44-313(a) because they are individuals or organizations that employed Plaintiffs and other Class Members in Kansas.

202. Plaintiffs and other Class Members are "employees" under K.S.A. § 44-313(b) because Defendants allowed or permitted them to perform work in Kansas.

203. Defendants failed to pay Plaintiffs and other Class Members all of the wages to which they were entitled under state and federal law for the time they worked in Kansas, in violation of K.S.A. § 44-314.

204. Defendants' conduct in failing to properly compensate Plaintiffs and other Class Members was willful, because Defendants were aware of their obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe their actions were in compliance with those laws.

205. Because Defendants' conduct was willful, Defendants are required to pay up to double the amount owed as wages to Plaintiffs and other Class Members, under K.S.A. § 44-315.

206. Plaintiffs and other Class Members also are entitled to recover all other amounts allowed as damages under K.S.A. § 44-313, *et seq*.

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68
(Class Claim)
(Against All Defendants)

207. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

208. This Count sets for claims by Plaintiffs and other Class members against all Defendants for damages resulting from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-68.

209. Each Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

210. Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

211. RICO Enterprises I and II (collectively, "the RICO Enterprises"), as defined in paragraphs 55-59, *supra*, are association-in-fact enterprises with the common purpose to recruit, contract, transport, and employ foreign workers to work as landscapers at Defendants' business operations in Missouri and Kansas.

212. The RICO Enterprises are engaged in interstate commerce in that their activities and transactions related to the international and interstate movement of workers, and landscaping operations both in Missouri and Kansas, affect interstate commerce and frequently require travel and communications across state and international lines.

213. The RICO Enterprises function as continuing units.

214. The Defendants conducted or participated in—or conspired to conduct or participate in—the affairs of the RICO Enterprises, through a pattern of numerous

acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and/or 18 U.S.C. § 1962(d), related by their common purpose.

215. Specifically, the Defendants conducted or participated in—or conspired to conduct and/or participate in—the affairs of the RICO Enterprises by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

   a. Mail fraud in violation of 18 U.S.C. § 1341;

   b. Wire fraud in violation of 18 U.S.C. § 1343; and

   c. Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

*Predicate Acts*

Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343

216. As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprises, made and/or conspired to make material misrepresentations to MDED and USDOL regarding the nature of Plaintiffs' and other H-2A workers' work, the hours they would work, and the wages they would receive.

217. As set forth in the preceding paragraphs, the Defendants, though the RICO Enterprise, used and/or conspired to use the mails and wire communications, including communications via telephone, fax, internet, and/or email, on numerous occasions to further these fraudulent schemes.

218. These willful, knowing, and intentional acts constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

Fraud in Foreign Labor Contracting: 18 U.S.C. § 1351

219. As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprises, knowingly and with intent to defraud did and/or conspired to recruit,

solicit, and hire Plaintiff outside the United States, for the purpose of employment in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding the nature of Plaintiffs' and other H-2A workers' work, the hours they would work, and the wages they would receive.

220. These willful, knowing, and intentional acts constitute fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

*Pattern of Related Racketeering Acts*

221. The Defendants engaged in the racketeering activity described in this claim repeatedly in 2018 through 2021.

222. The Defendants, through the RICO Enterprises, rely on the racketeering acts described in this Amended Complaint to conduct their regular business activities.

223. The Defendants racketeering acts have or had similar purposes: to profit from the fraud Defendants committed in the contracting, hiring, and employment of Plaintiffs and other H-2A workers.

224. Each of the Defendants' acts yielded similar results and caused similar injuries to Plaintiffs and other H-2A workers, including underpayment of wages.

225. As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the Defendants and their agents.

226. As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprises, directed their racketeering activities at similar individuals and entities: Plaintiff and other H-2A workers, and federal and state government agencies.

227. The Defendants' acts have or had similar methods of commission, such as common recruitment tactics, consistent practices with respect to collecting payments from Plaintiff and other H-2A workers, and use of similar employment practices and policies with respect to Plaintiff and other H-2A workers.

*Injury and Remedies*

228. As a direct and proximate result of the Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiffs and other H-2A workers have suffered injuries to their property, including but not limited to the difference between the wages they earned and what they would have earned if Defendants had not fraudulently misclassified them as agricultural workers and other pecuniary losses and/or losses to real or personal property.

229. Plaintiffs and other H-2A workers are entitled to an award of damages in an amount to be determined at trial, including but not limited to:

   a. compensation for their injuries to their property;

   b. trebling of the damages set forth in subparagraph (a), *supra*; and

   c. attorneys' and experts' fees and costs associated with this action, as authorized by 18 U.S.C. § 1964(c).

Fifth Cause of Action
Filing False Information Returns, 26 U.S.C. § 7434
(Class Claim)
(Against Briggs Traditional and Capen Briggs)

230. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

231. This Count sets for claims by Plaintiffs and other Class members against all Defendants Briggs Traditional and Capen Briggs for damages resulting from Defendants' violations 26 U.S.C. § 7434 (filing false information returns).

232. As set forth in paragraphs 124-127, *supra*, in 2018, 2019, and 2020, the Defendants provided the IRS false information regarding Plaintiffs' and other H-2A workers' Social Security wages on IRS Form 941 and/or other information returns, in an attempt to defraud the IRS.

233. Plaintiff and other Class members therefore are entitled, under 26 U.S.C. §7434(b), to recover the greater of either $5,000.00 for each false information return or damages Plaintiffs and other Class members sustained, the costs of this action, and reasonable attorney's fees.

234. As required by 26 U.S.C. § 7434(d), Plaintiffs will provide a copy of this Amended Complaint to the Internal Revenue Service.

Sixth Cause of Action
Employment Discrimination in Violation of 42 U.S.C. § 1981
(Against All Defendants)

235. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

236. The actions of Defendants, as set forth herein, violated Plaintiffs' and other H-2A workers' rights to receive full and equal benefit of all laws as guaranteed by 42 U.S.C. § 1981, including Plaintiffs' and other H-2A workers' rights to enjoy and benefit from non-discriminatory employment relationships with Defendants.

237. As set forth herein, Defendants imposed discriminatory terms and conditions of employment on Plaintiffs and other H-2A workers—specifically failing to pay

required overtime premiums—to which U.S. citizen employees were not similarly subjected.

238. Defendants knowingly, willfully, maliciously, intentionally, and without justification acted to deprive Plaintiffs and other H-2A workers of their rights.

239. Plaintiffs and other H-2A workers seek all appropriate relief in an amount to be determined at trial, including, but not limited to:

    a. compensatory damages for the deprivation of Plaintiffs' and other H-2A workers' civil rights;

    b. punitive damages for Defendants' malicious and reckless discriminatory conduct;

    c. attorneys' and experts' fees and costs of this action as set forth in 42 U.S.C. § 1988(b)-(c).

<u>Seventh Cause of Action</u>
<u>Alter Ego</u>
<u>(Against All Defendants)</u>

240. The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

241. Defendants ignored corporate formalities and used the corporate form to perpetuate fraud.

242. Defendant Capen Briggs also used Briggs Traditional and Briggs Turf as a subterfuge to permit the Defendants to commit fraud on the federal and state government.

243. Allowing Defendants Larry Briggs and Capen Briggs to use Briggs Traditional, Briggs Turf, Kenosha, and Naudi-D Investments to shield themselves from

Page 45 of 49

personal liability and the business entities from joint and several liability for the violations of law they committed would work an injustice on Plaintiffs.

244. Plaintiffs therefore seek a declaratory judgment finding that Defendants are alter egos of each other.

## VIII. Demand for Trial by Jury

245. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by this Second Amended Complaint.

## IX. Request for Relief

WHEREFORE, Plaintiffs request that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible H-2A workers who choose to do so to opt-in to this action;

c. certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

d. declaring that Defendants violated the FLSA, Missouri Overtime Law, the Kansas Wage Payment Act, the RICO, 42 U.S.C. § 1981, and 26 U.S.C. § 7434(d) (filing false information returns);

e. declaring that Defendants are alter egos of each other;

f.       permanently enjoining Defendants from further violations of the FLSA, Missouri Overtime Law, the Kansas Wage Payment Act, 42 U.S.C. § 1981, and the RICO;

g.       granting judgment to Plaintiffs and other H-2A workers who opt in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

h.       granting judgment to Plaintiffs and other H-2A workers on their Missouri Overtime Law and Kansas Wage Payment Act claims and awarding them their unpaid wages and liquidated damages as provided for by statute;

i.       granting judgment to Plaintiffs and other H-2A workers on their RICO claims and awarding them the trebled amount of their pecuniary losses;

j.       granting judgment to Plaintiffs and other H-2A workers on their claims pursuant to 26 U.S.C. § 7434(d) and awarding them the greater of either $5,000.00 for each false information return or damages Plaintiffs and other Class members sustained;

k.       granting judgment to Plaintiffs and other H-2A workers on their claims pursuant to 42 U.S.C. § 1981 that Defendants discriminated against them based on their alienage.

l.       Awarding Plaintiffs and H-2A workers prejudgment and postjudgment interest as allowed by law;

m.       Awarding Plaintiffs and other H-2A workers their costs and reasonable attorneys' fees; and

n.       Granting such further relief as the Court finds just.

DATED:     Decatur, Georgia
           December 23, 2021

RADFORD & KEEBAUGH, LLC

*/s/ Daniel Werner*
Daniel Werner (*pro hac vice*)
315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA 30030
ph: (678) 271-0304
fax: (678)271-0314
dan@decaturlegal.com


DUGAN SCHLOZMAN LLC

*/s/ Heather Schlozman*
Heather Schlozman
Mark Dugan
8826 Santa Fe Drive, Suite 307
Overland Park, Kansas 66212
ph: 913-322-3528
fax: 913-904-0213
heather@duganschlozman.com
mark@duganschlozman.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 23, 2021, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Daniel Werner
Co-Counsel for Plaintiffs