**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

JOSE ROBERTO RIOS-GUTIERREZ,
ET AL.,                                              )
                                                     )
                        Plaintiffs,                  )
                                                     )
vs.                                                  )        Case No. 4:21-cv-00374-FJG
                                                     )
BRIGGS TRADITIONAL TURF                              )
FARM, INC.,                                          )
                                                     )
                        Defendant.                   )

**DEEFNDANTS BRIGGS TRADITIONAL TURF FARM, INC, L.C.'S, BRIGGS TURF**
**FARM, LLC,'S, LAWRENCE "LARRY" BRIGGS', CAPEN BRIGGS' , NAUDI-D**
**INVESTMENTS, LLC, AND KENOSHA, LLC'S REPLY TO PLAINTIFFS'**
**SUGGESTIONS IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page #

**Table of Contents**…………………………………………………….       i

**Table of Authorities**………………………………………………..       iii

**I.**  **RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS**……………………………………………..       1

    **A.**  **Defendants Interrelationships** ………………………….       1

    **B.**  **Naudi-D**………………………………………..       5

    **C.**  **Additional Facts**…………………………………………       8

**II.**  **REPLY TO PLAINTIFFS' SUMMARY OF ARGUMENT**………….       10

**III.**  **RELY TO PLAINTIFFS'ARGUMENT AND CITATION TO AUTHORITY**………………………………………………       10

    A.  Summary Judgment Standard…………………………………….10

    B.  Capen Briggs' and Larry Briggs Declarations Should Not Be Stricken 10

    C.  The Plaintiffs' Alter-Ego Claim is Central to their Claim that All Defendants Were Employers of the Plaintiffs……………       11

    D.  Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs Seventh Cause of Action That They Acted as Alter Egos of Each Other………………………………………       11

        *1.*  *L.C. Briggs Turf Farm, LLC; Briggs Traditional Turf Farm, Inc.; Larry Briggs; and Capen Briggs*…………       12

        *2.*  *Kenosha, LLC and Naudi-D Investments, LLC*……………       12

        *3.*  *The Defendants Should Not Be Treated as Alter-Egos of One Another*..………………………………………       13

    E.  Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' First Cause of Action Under the Fair Labor Standards Act……………………………………………       14

F.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Second Cause of Action under the Missouri Overtime Law</u>……………………………………………… 17

G.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Third Cause of Action under the Kansas Overtime Law</u>………… 18

H.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Sixth Cause of Action for Employment Discrimination in Violation of 42 U.S.C. § 1981</u>…………………………………………… 19

I.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Fourth Cause of Action Under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961-1968</u>……………………… 20

    1.     *.Defendants Did Not Violate 18 U.S.C. § 1341*…………… 20

    2.     *Defendants Did Not Violate 18 U.S.C. § 1343*…… 21

    3.     *Defendants Did Not Violate 18 U.S.C. § 1343*…… 22

J.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Fifth Cause of Action for Filing False Information Returns, 26 U.S.C. § 7434</u>……………………………… 23

**IV.**     **CONCLUSION**……………………………………………… 24

Case 4:21-cv-00374-FJG   Document 122   Filed 01/26/24   Page 3 of 31

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Supreme Court Cases*

*Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298 97 S.Ct. 576,
50 L.Ed. 2d 494 (1977)……………………………………………………………    15

*Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S 755, 762-763,
69 S.Ct. 1274 (1949)……………………………………………………………..    15

*Holly Farms Corp. v. N.L.R.B.*, 517 U.S 392, 116 S.Ct. 1396. 134
L.Ed.2d 593 (1996)………………………………………………………………    16

*Kelly v. United States*, 590 U.S. _____,140 S.Ct. 1565, 1571, 206
L.Ed. 882 (2020)………………………………………………………………..    21

*McNally v. United States*, 483 U.S. 350, 356. 170 S.Ct. 2875 (1987)………………    21

*Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 75 S.Ct. 719, 99
L.Ed. 1040 (1955)………………………………………………………………    116

*Safeco Ins. Co. of America v. Burr.* 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d
1045 (2007)………………………………………………………………………    23


*Court of Appeals Cases*

*Bills v. Cactus Family Farms, LLC*, 5 F.4th 844, 847 (8th Cir. 2021)…………………..    16

*Doherty v. Turner Broadcasting Systems, Inc.,* 72 F.4th 324, 329-330 (Dist.
Of Columbia Circuit, 2023)…………………………………………………………    23-24

*Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019)………………    20

*Steiger v. U.S.* 373 F.2d 133, 135 (10th Cir. 1967)……………………………………    23

*United States v. Asomani*, 7 F.4th 749, 752 (8th Cir. 2021)………………………………    21


*Federal District Court Cases*

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009)…………………………..    19

*Karnes v. Happy Trails RV Park, LLC*, 361 F.Supp.3d 921 (W.D. Mo. 2019). ………..    18

*Trapp v. O Lee, LLc*, 98 F.Supp.2d 511 (E.D. Mo. 2003)…………………………………  18

*Yang v. Robert Half International, Inc.*, 75 F.4th 949, 962 (8th Cir. 2023)………………19

   *State Court Cases*


### Kansas State Court Cases

*Dollison v. Osborne County*, 241 Kan. 374, 737 P.2d 43 (1987)……………………    19


## FEDERAL STATUTES

18 U.S.C. § 1341……………………………………………………………………..   20

18 U.S.C. § 1343……………………………………………………………………… 21, 22

18 U.S.C. § 1961-1968………………………………………………………………   21

26 U.S.C. § 7434……………………………………………………………………   23

29 U.S.C. § 203(f)………………………………………………………………… 16, 17

29 U.S.C. § 213(a)(6)………………………………………………………………..   15

29 U.S.C. § 213(b)(12)………………………………………………………………   15

29 U.S.C. § 231(b)(13)………………………………………………………………   15

42 U.S.C. § 1981……………………………………………………………………… 19, 20


## STATUE STATUTES

   *Missouri Statutes*

Section 290.505, RSMo…………………………………………………………………    18

Section 516.140, RSMo………………………………………………………………..    18

   *Kansas Statutes*

K.SA. 44-313, *et seq*………………………………………………………………………    18

K.S.A. 44-1202(d)……………………………………………………….. 18

K.S.A. 60-513(2)(4)………………………………………………………… 19

**FEDERAL REGULATIONS**

29 C.F.R. § 780.144 (2020)………………………………………………….. 16

29 C.F.R. § 780.145 (2020)…………………………………………………… 16

COME NOW Defendants, Briggs Traditional Turf Farm, Inc. ("Briggs Traditional"), L.C., Briggs Turf Farm, LLC ("LC Briggs"), Lawrence "Larry" Briggs ("Larry Briggs"), Capen Briggs ("Capen Briggs"), Naudi-D Investments, LLC ("Naudi-D") and Kenosha, LLC ("Kenosha") (collectively "Defendants"), by and through their undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit the following Reply to Plaintiffs' Suggestions in Opposition to Defendants' Motion for Summary Judgment. [Doc. # 121]

## I.   RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS

### A.   Defendants Interrelationships

32.   L.C. Briggs Turf Farm, LLC ("Briggs Turf") principally grows sod. (Larry Briggs Dep. 17:8–14, 45:24–46:1, 85:9–86:2, 86:6-22 (Doc. 117-29); Capen Briggs Dep. 76:21–24, 88:8–13 (Doc. 117-28).

> **RESPONSE:**   **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

33.   On or about January 1, 2015, Defendant Capen Briggs and his son, Defendant Larry Briggs, (Larry Briggs Dep. 8:1-18 (Doc. 117-28)), signed a "Lease Agreement" on behalf of Defendants Briggs Traditional and Briggs Turf, respectively, by which "Lessor" Briggs Traditional would lease certain farm properties to "Lessee" Briggs Turf for the purpose of growing and harvesting sod. (Larry Briggs Dep. 28:20–29:17, 31:3–12, Exhs. 1, 28-31 (Doc. 117-29)).

> **RESPONSE:**   **ADMITTED IN PART AND DENIED IN PART FOR PURPOSES OF RESPONDING TO PLAINTIFFS' SUGGESTIONS IN OPPOSITION.   Capen Briggs is Larry Briggs' son, not his father. (Plaintiffs' Exhibit 29, 8: 1 -18).   Larry Briggs clarified that the document was "turned around" and that Briggs Traditional should have been named as the "Lessee"). (Plaintiffs' Exhibit 29, 31: 3 -8).**

1

34.     The "Lease Agreement" did not specify the amount of rent to be paid. (Larry Briggs Dep. 30:15–21 (Doc. 117-29), Capen Briggs Dep. 86:14–18, Exh. 1 (Doc. 117-28)).

> **RESPONSE:**     **ADMITTED IN PART AND DENIED IN PART FOR PURPOSES OF RESPONDING TO PLAINTIFFS' SUGGESTIONS IN OPPOSITION. The testimony cited in the record indicated that it would be based upon yardage and based upon the costs incurred to grow the sod.**

35.     Per the agreement, Lessee Briggs Turf would be able to unilaterally renew the "Lease Agreement" in one-year increments upon written notice to Lessor Briggs Traditional. (Capen Briggs Dep. 86:14–18, Exh. 1 (Doc. 117-28))

> **RESPONSE:**     **DENIED. The Lease Agreement indicated that it could be extended indefinitely by mutual agreement of the parties each year. (Plaintiffs Exhibit 28, p. 46).**

36.     However, in actuality, Defendant Briggs Traditional leased farms from Defendant Briggs Turf. (Larry Briggs Dep. 30:6–14, 31:3–12, Exh. 31 (Doc. 117-29)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

37.     The properties leased to Briggs Traditional were owned by the Briggs Family Trust. (Larry Briggs Dep. 31:13–19, 70:8–16 (Doc. 117-29)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

38.     Defendant Larry Briggs owns both Defendant Briggs Turf and the Briggs Family Trust. (Larry Briggs Dep. 34:14–18 (Doc. 117-29)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

2

39.     In sum, although Briggs Turf doesn't own the land, it nevertheless leases some of the land to Briggs Traditional Turf Farm, Inc. ("Briggs Traditional"). (Larry Briggs Dep. 34:14-19 (Doc. 117-29)).

**RESPONSE:     ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

40.     The amount Briggs Traditional paid Briggs Turf to lease the land varied. (Capen Briggs Dep. 86:14-88:7 (Doc. 117-28)).

**RESPONSE:     ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

41.     According to Capen Briggs, "…we'd usually just split it or figure out how it worked out for both of us…"  (Capen Briggs  Dep. 86:19-23(Doc. 117-28)).

**RESPONSE:     ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

42.     There was nothing in writing showing how Capen Briggs and Larry Briggs would decide how to split the lease payments. (Capen Briggs Dep. 88:5-7 (Doc. 117-28)). It would just be split "somehow … between the two companies." (Capen Briggs Dep. 87:18-88: (Doc. 117-28)).

**RESPONSE:     ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

43.     Briggs Traditional and Briggs Turf share an office. (Capen Briggs Dep. 167:4–7 (Doc. 117-28); Mainerd Dep. 20:1–22, 39:19–39:22, 49:8–12, 50:17–25 (Doc. 117-30); Felix Rodriguez Dep. 21:4–9 31)).

**RESPONSE:     ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

44.     Elizabeth Francis Mainerd is the office manager for Briggs Traditional and Briggs Turf. (Larry Briggs Dep. 46:10–25, 65:16–23, 164:6–11 (Doc. 117-29)); Mainerd Dep. 14:23–15:3, 15:7–9, 15:19–21, 86:23–25 (Doc. 117-30)).

> **RESPONSE:**     **DENIED.  Larry Briggs testified in the cited testimony that Mainard was not paid by Briggs Turf, but that she helped him. (Plaintiffs Exhibit 29, 46: 17 – 23).  Mainard testified that she is not paid by Briggs Turf.  (Plaintiffs Exhibit 30, 15: 4 – 6).  In none of the cited testimony does Mainard indicate that she was employed by Briggs Turf.**

45.     Though Ms. Mainerd does work for Briggs Turf, she is paid exclusively by Briggs Traditional. (Larry Briggs Dep. 46:12-25 (Doc. 117-29)).

> **RESPONSE:**     **DENIED.  Larry Briggs testified in the cited testimony that Mainard was not paid by Briggs Turf, but that she helped him. (Plaintiffs Exhibit 29, 46: 17 – 23).  Mainard testified that she is not paid by Briggs Turf.  (Plaintiffs Exhibit 30, 15: 4 – 6).  In none of the cited testimony does Mainard indicate that she was employed by Briggs Turf.**

46.     Landscaping companies, as well as owners of commercial, residential, and government properties entered directly into contracts with Defendants Briggs Turf and Briggs Traditional for the purchase and installation of sod. (Capen Briggs Dep. 74:9–17, 75:2–6, Exh. 23 (Doc. 117-28); D. Ward Dep. at 15:2–4, 16:14–17:3, 17:18–21, 19:1–16, 22:7–23:13, 30:9–17, 36:8–39:14, 38:10–39:22, Exh. S3, Exh. S4, Exh. S11 (Doc. 117-33); Rolling Meadows Dep. at 11:8-17, 13:20–14:1, 14:14–15:3, 16:17–17:25, 22:6–22, 23:7–24:1, 25:10–18, 26:11–17, 28:3–14, 30:23–31:5, Exh. S35, Exh. S36 (Doc. 117-32); Rolling Neighbors Decl. ¶¶ 7–9 (Doc. 117-32); R. Keith Decl. ¶¶ 8, 12, 14-17 (Doc. 117-34); K. King Decl. ¶¶ 8-9, 13, 15–16 (Doc. 117-35); B. Harrison Decl. ¶¶ 8, 10-12 (Doc. 117-36)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

4

47.     The decision about which company was contracted was determined by who had contacts with the particular contractor. (Capen Briggs Dep. 74:9-75:13 (Doc. 117-28)). If a contractor hired Briggs Traditional, Briggs Turf's sod may be installed. (Larry Briggs Dep. 58:15-59:15, 63:17-64:10 (Doc. 117-29)).

> **RESPONSE:**          **ADMITTED IN PART AND DENIED IN PART.  Larry Briggs cited testimony was that sod delivered came from his farms but not that it was Briggs Turf's sod.  Plaintiffs Exhibit 29, 63: 17 – 764: 10).**

48.     Briggs Turf and Briggs Traditional share a website linked to Briggs Turf, *see* http://lcbriggsturffarm.net/ (last viewed January 5, 2024), and a LinkedIn page, *see* https://www.linkedin.com/company/briggs-traditional-turf-farm/about (last viewed January 5, 2024).

> **RESPONSE:**          **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

49.     The vast majority of the worksites listed in Defendants' Job Orders and Labor Certification applications were farms owned by Larry Briggs's family trust or Kenosha, LLC and operated by Briggs Turf. (Capen Briggs Dep. 92:10-93:16, 117:3-22, 134:13–135:6, 146:12–147:6, Exhs. 3, 26, 33, 37 (Doc. 117-28); Mainerd Dep. 106:16-19 (Doc. 117-30); Larry Briggs Dep. 52:4-7 (for the South Knight Road property) (Doc. 117-29); Werner Opp. Decl. at ¶ 4, Ex. DW-26 (Property Records)).

**RESPONSE:**          **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

### B.     Naudi-D

50.     Naudi-D owns only the bunkhouse where the H-2A workers lived when they worked for Defendants. (Larry Briggs Dep. 67:20–25, 68:17–69:13, 71:4–13 (Doc. 117-29); Capen Briggs

5

Dep. 118:20–119:9 (Doc. 117-28); Mainerd Dep. 52:11–19 (Doc. 117-30)); Avendaño-Martinez Decl. at ¶ 7 (Doc. 117-23); Martínez-Méndez Decl. at ¶ 7 (Doc. 117-24); Rodríguez-Anaya Decl. at ¶ 7 (Doc. 117-25); Mendoza-Servín Decl. at ¶ 7 (Doc. 117-26); Ríos-Gutiérrez Decl. at ¶ 7 (Doc. 117-27)).

> **RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

51.     From 2017 through the present, Briggs Traditional paid rent to Naudi-D at varying rates, and sometimes not at all. (Werner Opp. Decl. at ¶ 4, Ex. DW-23).

> **RESPONSE:** **ADMITTED IN PART AND DENIED IN PART.  Rent was paid as money was available.  In 2022 Briggs Traditional began renting both sides of the Bunk House because more workers were brought in.  At this point rent of $2,000.00 per month was paid by Briggs Traditional to Naudi-D.  (Declaration of Francie Mainard (Exhibit "1"), p. 1, paragraphs 3-5).**

52.     The lease agreement between Briggs Traditional and Naudi-D wasn't signed until January 1, 2023; almost six years after the Briggs Traditional's rental of the bunk house ostensibly began. (Werner Opp. Decl. at ¶ 4, Ex. DW-24).

> **RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

53.     Defendants charged Plaintiffs 25 dollars per week in 2018 to live in the bunkhouse, which Naudi-D Investments, LLC owns. (Larry Briggs Dep. 67:20–25, 68:17–69:13, 71:4–13 (Doc. 117-29); Capen Briggs Dep. 118:20–119:9 (Doc. 117-28); Mainerd Dep. 52:11–24 (Doc. 117-30)); Avendaño-Martinez Decl. at ¶ 7 (Doc. 117-23); Martínez-Méndez Decl. at ¶ 7-8 (Doc. 117-24); Rodríguez-Anaya Decl. at ¶ 7 (Doc. 117-25); Mendoza-Servín Decl. at ¶ 7 (Doc. 117-26); Ríos-Gutiérrez Decl. at ¶ 7-8 (Doc. 117-27)).

> **RESPONSE:** **ADMIT FOR PURPOSES OF RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.  However, this only**

6

**occurred only during a few months during the 2018 Season and the rent was collected by Briggs Traditional. (Declaration of Capen Briggs, Exhibit "1", p. 4, ¶ 26).**

54.     In the 2018 Job Orders and Labor Certification Applications, Capen Briggs affirmed that he would provide free housing for all employees. (Capen Dep. 96:1-102:14 (*inter alia*, identifying signatures on Clearance Order), Exh. 26, Bates Nos. DEFENDANTS000015 ("The employer assures the availability of no cost or public housing…") & 16 ("Housing is provided at no cost only to non-commuting workers." (Doc. 117-28)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

*55.*     In 2018 and 2019, Kenosha owned only the Defendants' shared office and a house, where Felix Rodriguez lived. (Werner Opp. Decl. at ¶ 4, Ex. DW-1; Rodriguez Dep. 6:8-7:1 (Doc. 117-31)). It acquired some farm properties in 2020. *Id.*

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

56.     Naudi-D and Kenosha, LLC maintain the same office address as Defendants Briggs Traditional and Briggs Turf. (Larry Briggs Dep. 54:1–7, 59:9–12, 65:12–15 (Doc. 117-29); Mainerd Dep. 52:7-53:16 (Doc. 117-30)).

> **RESPONSE:**     **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

57.     Though Plaintiffs requested documents regarding Naudi-D's financial relationship with the other Defendants in their discovery demands, Defendants have produced no lease, receipts, transaction reports, or any other document showing the purpose or basis of the rents paid, nor who paid those rents. (Werner Opp. Decl. at ¶ 4, Ex. DW-25 (Defendant Kenosha's Responses to Plaintiffs' First Requests for Production), Defendant's Resp. to RFP No. 3 at pp. 2-3).

7

**RESPONSE:** **OBJECTION/DENIED. Plaintiffs refer to Kenosha's Responses to Discovery and not Naudi-D, therefore Defendants deny this Statement of Fact.**

C. **Additional Facts**

58. The seed Plaintiffs spread was not produced on Defendants' farms, and the seeding did not take place on the Defendants' farms. (12/1/2023 Werner Decl. ¶ 4, Ex. DW-11 (Briggs Traditional Turf Farm Inc.'s Amended Responses to Plaintiffs' Requests for Admissions (Doc. 117-12), Defendants' Resp. to Int. No. 13 (g)-(i), pp. 41-42); 12/1/2023 Werner Decl. ¶ 4, Ex. DW-12 (Daily Reports showing examples of the installation of seed at off-farm properties (Doc. 117-13); Mainerd Dep. at 150:10-22 (Doc. 117-30)).

**RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

59. On numerous occasions, Plaintiffs and other H-2A workers installed sod the general contractor provided, and which was not grown on any property owned or leased by one or more of the Defendants. (12/1/2023 Werner Decl. ¶ 4, Ex. DW-11 (Briggs Traditional Turf Farm Inc.'s Amended Responses to Plaintiffs' Requests for Admissions) (Doc. 117-12), Defendants' Resp. to Int. No. 13 (g)-(i), pp. 41-42)). For example, Lazer Level, which contracted with Defendants to install sod at T-Bone Stadium in Kansas City, provided the bluegrass themselves. (Mainerd Dep. at 118:4-21 (Doc. 117-30)).

**RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

60. Defendant Larry Briggs describes the sod delivery process as follows: "I drop sod. I don't pay attention, I don't talk to people. I drop the sod, have somebody sign me a ticket, and I'm gone." (Larry Briggs Dep. at 63:23-25 (Doc. 117-29)).

8

**RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

61.     In addition to laying seed Defendants purchased from outside suppliers, Plaintiffs also laid sod that was not grown on any of the Defendants' farm. On August 31, 2023, Office Manager Francie Mainerd described an instance of Defendants' employees laying sod that was not grown on any of the Defendants' farms:



**RESPONSE:** **ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

9

62.     Francie Mainerd acknowledged that she mailed documents and payments to Mas H-2A as part of the H-2A visa application process. (Mainerd Dep. 72:23-73:17, 75:13-78:16, 99:1-10 (Doc. 117-30)).

>    **RESPONSE:         ADMITTED FOR PURPOSES OF RESPONDING TO PLAINTIFF'S SUGGESTIONS IN OPPOSITION.**

## II.     REPLY TO PLAINTIFFS' SUMMARY OF ARGUMENT

Pursuant to the facts presented and the arguments made in Briggs Traditional's and Capen Briggs' Suggestions in Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. #120] Plaintiffs are not entitled to judgment as a matter of law on their claims that Briggs Traditional Turf Farm and Capen Briggs:  (1) violated the Fair Labor Standards Act and state law by failing to pay overtime to Plaintiffs; (2) violated Plaintiffs' rights under 42 U.S.C. § 1981; or (3) they violated 26 U.S.C. § 7434 by filing false information returns.

## III.     RELY TO PLAINTIFFS' ARGUMENT AND CITATION TO AUTHORITY

### A.     Summary Judgment Standard

Defendants incorporate by reference their statement of the standard for Summary Judgment contained in their Suggestion in Support of Motion for Summary Judgment. [Doc. #14, p. 10].

### B.     Capen Briggs' and Larry Briggs Declarations Should Not Be Stricken.

Plaintiffs argue that the Declarations of Capen Briggs and Larry Briggs should be stricken in their entirety and argue that they constitute superficial self-serving declarations.  The declarations are not self-serving and contained sworn statements of fact.  Plaintiffs do not address each fact testified in each declaration, but only focus on certain declarations.  Yet, in spite of this, they request

10

that the Court disregard all of the statements made in the declarations. It is the Defendants' position that all statements of fact contained in the declarations should not be stricken and taken into consideration by the Court in ruling on Defendants' Motion for Summary Judgment.

### C. The Plaintiffs' Alter-Ego Claim is Central to their Claim that All Defendants Were Employers of the Plaintiffs.

Plaintiffs argue that because Defendants did not seek summary judgment on the issue of whether all of them were employers of the Plaintiffs that Defendants are not entitled to judgment as a matter of law. Plaintiffs' alter-ego claim in their Complaint is the claim that ties all of the causes of action raised by them against Defendants in this case. To avoid the possibility of summary judgment the Plaintiffs argue that all Defendants could be considered employers of the Plaintiffs even if they were not acting as alter-egos of one another. Defendants respectfully suggest, based upon the uncontroverted facts, that there is no genuine issue of material fact on the Plaintiffs' alter-ego theory and, therefore, Defendants are entitled to judgment as a matter of law on this claim.

### D. Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs Seventh Cause of Action That They Acted as Alter Egos of Each Other.

In Plaintiffs' Seventh Cause of Action they allege that all Defendants are alter egos of one another and that they are all liable for the claims made by Plaintiffs. (Plaintiffs' Second Amended Collective and Class Action Complaint, pp. 45-46)(Doc. #41).

The uncontroverted facts in this case establish that the Defendants are not alter-egos of one another and that no corporate veil should be pierced to hold any Defendant, other than Briggs Traditional potentially liable for any of the Plaintiffs' various causes of action. For these reasons Defendants Capen Briggs, LC Briggs, Larry Briggs, Naudi-D and Kenosha are entitled to judgment as a matter of law on Plaintiffs' Seventh Cause of Action in its Second Amended Complaint.

1.    *L.C. Briggs Turf Farm, LLC; Briggs Traditional Turf Farm, Inc.; Larry Briggs; and Capen Briggs*

Capen Briggs is the President and sole shareholder of Briggs Traditional. (Defendants Statement of Fact in Motion for Summary Judgment ("SoF"), ¶ 1). Capen Briggs created Briggs Traditional. (SoF ¶ 2). Capen Briggs manages Briggs Traditional and no other Defendant in this case has management control over Briggs Traditional. ( (SoF ¶ 3). Capen Briggs has no ownership interest in LC Briggs. (SoF ¶ 5). LC Briggs is owned by Lawrence Briggs. (SoF ¶ 6). Lawrence Briggs created LC Briggs. (SoF ¶ 7). No plaintiff in this case or any member of the class in this case has been employed by Lawrence Briggs or any entity of which he has ownership interest in. ( (SoF ¶ 8). Lawrence Briggs has no ownership interest in Briggs Traditional. (SoF ¶ 9).

Briggs Traditional maintains its own separate bank accounts and finances regarding its operations. (SoF ¶ 17). No other Defendant in this case has transferred assets to Briggs Traditional since 2018. (SoF ¶ 21). No other Defendant in this case has transferred assets to LC Briggs since 2018. (SoF ¶ 22). No other Defendant in this case has transferred contracts to Briggs Traditional since 2018, although under certain circumstances, L.C. Briggs did use Briggs Traditional as a subcontractor to install sold that it sold to customers. (SoF ¶ 23).

2.    *Kenosha, LLC and Naudi-D Investments, LLC*

Lawrence Briggs and Capen Briggs are 50% owners of Kenosha. (SoF ¶ 10). Kenosha rents property to Briggs Traditional for the purpose of the growing of sod. (SoF ¶ 11). Kenosha is solely in the business of renting property for the growing of sod and has not installed sod at any location from 2018 through the present. (SoF ¶ 12). Capen Briggs is the only member of Naudi-D. (SoF ¶ 13). Lawrence Briggs has no ownership interest in Naudi-D and is not involved in its operations.

12

("SoF ¶ 14). Naudi-D is the owner of the property where foreign workers for Briggs Traditional are housed while working for Briggs Traditional. (Exhibit "1", p. 2, ¶ 12). (SoF ¶ 15). Briggs Traditional pays rent to Naudi-D for the use of the property when foreign workers for Briggs Traditional are housed while working for Briggs Traditional. (SoF ¶ 16). Kenosha maintains its own separate bank accounts and finances regarding its operations. (SoF ¶ 18). Naudi-D maintains its own separate bank accounts and finances regarding its operations. (SoF ¶ 19). LC Briggs maintains its own separate bank accounts and finances regarding its operations. (SoF ¶ 20).

<em>3.      The Defendants Should Not Be Treated as Alter-Egos of One Another.</em>

The uncontroverted facts in this case establish that the Defendants should not be treated as alter egos of one another or that the corporate veil of any of the corporate entities should be pierced in this case. The corporate entity Defendants did not act as alter egos of one another with regard to the employment of the Plaintiffs or the class members. The uncontroverted facts in this case establish that the corporate entity Defendants operated individually and were maintained individually. Capen Briggs created Briggs Traditional. (SoF ¶ 2). Larry Briggs created LC Briggs. (SoF ¶ 7). Neither Lawrence Briggs nor any entity he has ownership in has ever employed any Plaintiff or class member in this case. (SoF ¶ 8). Although Kenosha is owned by Capen Briggs and Lawrence Briggs it simply rents property to Briggs Traditional for the purpose of growing of sod. (SoF ¶ 11). Kenosha has not installed sod at any location from 2019 through the present. (SoF ¶ 12). Capen Briggs is the only member of Naudi-D and Lawrence Briggs has no ownership interest in that entity. (SoF ¶¶ 13, 14). Naudi-D rents property to Briggs Traditional for the housing of foreign workers. (SoF ¶ 16). Briggs Traditional, Kenosha, Naudi-D and LC Briggs maintain their own separate bank accounts and finances with regard to their operations. (SoF ¶¶ 17-20).

There has been no transfer of assets between the corporate Defendants Briggs Traditional and LC Briggs. (SoF ¶¶ 21, 22). No other Defendant in this case has transferred contracts to Briggs Traditional since 2018, although under certain circumstances, L.C. Briggs did use Briggs Traditional as a subcontractor to install sold that it sold to customers. (SoF ¶ 23). Based upon these uncontroverted material facts Defendants are entitled to a judgment, as a matter of law, that they did not act as alter egos of one another.

As argued *infra*, it is the position of the Defendants that they did not violate any of the Plaintiffs' or class members' rights, therefore, no corporate veil should be pierced in this case because there was no commission of fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, to commit a dishonest or unjust act in contravention of the Plaintiffs' and class members legal rights.

Plaintiffs' statements of fact do not create a genuine issue of material fact precluding judgment as a matter of law in Defendants favor on this issue. Plaintiffs' claims that Capen Briggs used the business entitles as an instrumentality of fraud, which Defendants deny, would only apply to those entities in which Capen Briggs had an ownership interest or control over and would not apply to those entities or individuals he had no ownership interest or control over. Under the applicable law there is no issue of material fact regarding whether the Defendants acted as alter-egos of one another or whether their corporate veils should be pierced. For all of these reasons, Defendants are entitled to judgment as a matter of law on Plaintiffs' Seventh Cause of Action.

E.    Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' First Cause of Action Under the Fair Labor Standards Act.

In Plaintiffs' First Cause of Action they allege a violation of the Fair Labor Standards Act ("FSLA") and allege that the failure to pay them and the class members overtime was a violation of

14

FSLA.  The FSLA indicates that the type of work performed by the Plaintiffs and the members of the current class from the payment of overtime compensation.  The FLSA defines "Agriculture" as follows:

> includes farming in all its branches and among other things includes the **cultivation and tillage of the soil**, dairying, **the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities** (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, **including preparation for market, delivery to storage or to market or to carriers for transportation to market.**

29 U.S.C. § 203(f) (emphasis added).  The FSLA specifically excludes such agricultural work from minimum wage and maximum hour requirements (and therefore overtime payment).  29 U.S.C. § 213(a)(6); 29 U.S.C. § 213 (b)(12); 29 U.S.C. § 213 (b)(13).

The definition of "Agriculture" includes farming in all its branches performed by a farmer or on a farm as an incident or in conjunction with such farming operations.  *Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298, 300, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977).  The definition of agriculture contained in subsection (f)  of this section includes farming in both a primary and secondary sense.  *Id.* (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S 755, 762-763, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949) which held that:  "First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such'

15

farming operations." ).

Secondary agriculture encompasses "any practices ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." *Bills v. Cactus Family Farms, LLC*, 5 F.4th 844, 847 (8th Cir. 2021) (quoting *Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 398, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996)  The agricultural exemption was intended to "embrace the whole field of agriculture." *Id.* (*quoting Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 260, 75 S.Ct. 719, 99 L.Ed. 1040 (1955). Congress specifically added the words "or on a farm"  29 U.S.C. § 203(f) to to address the concern expressed by some members of the Senate that the exemption would not otherwise cover "the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job." *Id.* (*quoting  Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 767, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949)). Whether on-the-farm practices are "an incident to or in conjunction with such farming operations" is necessarily a fact intensive inquiry. *See* 29 C.F.R. § 780.144 (2020) ("The line ... is not susceptible of precise definition."); *Id.* 29 C.F.R. § 780.145 (2020) (a practice's character "must be determined by examination and evaluation of all the relevant facts and circumstances in the light of the pertinent language and intent of the Act"). *Id.*

L.C. Briggs is solely in the business of selling sod and has not installed sod at any location from 2018 through the present.  (SoF ¶ 24).  All H-2A Visas provided to the Plaintiffs and class members in this case were for the Plaintiffs and class members to perform agricultural labor and secondary agricultural labor including, but not limited to seeding sod and the laying of sod.  (SoF ¶ 25).  None of the Plaintiffs or class members in this case were ever directed by Capen Briggs or

16

Briggs Traditional or any other individual or entity to perform any type of landscaping duties at commercial, residential and/or government properties. (SoF ¶ 26). Briggs Traditional engaged MAS Labor H2A, LLC to evaluate its labor needs and to provide potential H-2A workers to work for Briggs Traditional. (SoF ¶ 28) Capen Briggs and Briggs Traditional relied upon MAS Labor H2A, LLC's representations that any H-2A worker contracted to work for Briggs Traditional would not be entitled to receive overtime compensation for the type of work they were being assigned to perform for Briggs Traditional. (SoF ¶ 29).

The work performed by the Plaintiffs and class members for Briggs Traditional constituted secondary agriculture and, therefore, the Plaintiffs and the class members were not entitled to receive overtime compensation under the FSLA. Briggs Traditional was not required to pay overtime to the Plaintiffs and class members under the agricultural exemption contained within the FSLA. Plaintiffs have not established any uncontroverted fact showing willfulness on the part of any Defendant and, therefore, the two year statute of limitations should apply.

For all of these reasons Defendants are entitled to judgment as a matter of law on Plaintiffs First Cause of Action. In the event the Court finds otherwise, the statute of limitations for such claims should be restricted to two (2) years from the date of the filing of the original Complaint in this case.

F.  Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Second Cause of Action under the Missouri Overtime Law.

Plaintiffs argue that Defendants are not entitled to judgment as a matter of law on their claims under the Missouri Overtime Law. First, Plaintiffs acknowledge that the MWHL and the FLSA should be interpreted consistently with one another, but argue that the agricultural exemption under the FLSA does not apply. Defendants incorporate their argument, *supra*, that the agricultural

exemption does apply and the Plaintiffs were not entitled to receive overtime wages. Second, Defendants disagree that there was substantial evidence of willfulness and respectfully suggest that Plaintiffs have failed to establish willfulness of the Defendants. Third, in *Karnes v. Happy Trails RV Park, LLC*, 361 F.Supp.3d 921, 935 (W.D. Mo. 2019) the Court held that the statute of limitations for overtime claims under the FLSA and the MWHL is two (2) years. Although Plaintiffs refer to § 290.527, RSMo to argue that the statute of limitations for their claims is three years, the relevant statute is § 516.140 RSMo which provides, in relevant part: "An action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation, and the recovery of any amount under and by virtue of the provisions of the Fair Labor Standards Act of 1938 and amendments thereto, such being an act of Congress shall be brought within two years after the cause accrued." *See Trapp v. O. Lee, LLC*, 918 F.Supp.2d 911, 913 (E.D. Mo. 2013). In Defendants' Answer to Plaintiffs' Second Amended Complaint they raised the affirmative defense of statute of limitations. (Defendants' Answer to Second Amended Complaint, p. 26) [Doc. #43].

> G. <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Third Cause of Action under the Kansas Overtime Law</u>.

Plaintiffs argue Defendants have misconstrued their claims under the Kansas statutes. Defendants note that in Plaintiffs' Second Amended Complaint they specifically refer to a violation of the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.* [Doc. #31, pp. 38 -39]. Plaintiffs' Second Amended Complaint makes no reference to the Kansas Minium Wage and Maximum Hours Law, K.S.A. § 33-1201, *et seq.* <u>Id</u>.

Under Kansas Law an employer does not include "any employer who is subject to the provisions of the FSLA and any other acts amendatory or supplemental thereto." K.S.A. 44-1202(d).

Although the Plaintiffs argue otherwise, the Court in *Dollison v. Osborne County*, 241 Kan. 374, 381, 737 P.2d 43 (1987) held that "the Kansas law does not apply to "employers" who are obliged to meet the standards under the FLSA." Because the Defendants cannot be considered employers under the applicable Kansas Law as alleged in their Complaint they are entitled to a judgment as a matter of law on Plaintiffs' Third Cause of Action.

Likewise, the statute of limitations for overtime claims under the KWPA is two (2) years). KSA 60-513(2)(4). In Defendants' Answer to Plaintiffs' Second Amended Complaint they raised the affirmative defense of statute of limitations. (Defendants' Answer to Second Amended Complaint, p. 26) [Doc. #43]. The Plaintiffs filed their original complaint on May 28, 2021, therefore any cause of action accruing prior to May 28, 2019 is barred by the applicable statute of limitations.

H.   Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Sixth Cause of Action for Employment Discrimination in Violation of 42 U.S.C. § 1981.

"While § 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, the statute does not provide a general cause of action for race discrimination." *Yang v. Robert Half International, Inc.*, 75 F.4th 949, 962 (8th Cir. 2023)(citing *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009). "'Any claim brought under § 1981 … must initially identified an impaired contractual relationship under which the plaintiff has rights.'" Id. (quoting *Gregory*, 565 F.3d at 468-469). "'to assert a prima facie § 1981 claim [the Plaintiff(s)] must allege: (1) [they were members ] of a protected class; (2) discriminatory intent by the defendants; (3) [Plaintiff's] engaged protected activity; and (4) the defendant interfered with that activity – the making and enforcement an employment contract. Id. (quoting *Gregory*, 565 F.3d at 469). The Plaintiffs must present evidence, not merely speculation, of discriminatory intent on the part of any of the Defendants to create a prima facie case under § 1981. *Yang*, 75 F.45th at 962. After a Plaintiff establishes a prima facie case the

19

burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019). "If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered non-discrimination reason is a pretext for discrimination. Id.

Briggs Traditional did not pay overtime to Plaintiffs or members of the class not based upon their race but based upon their H2-A status. (SoF ¶ 31). Even in the event that it is found that this was an error there is no genuine issue of material fact that any failure to pay overtime to the Plaintiffs' or the class members was because of their race or national origin. For these reasons, Defendants are entitled to judgment as a matter of law on Plaintiffs' Sixth Cause of Action.

I.     Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Fourth Cause of Action Under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961-1968.

.

1.     *Defendants Did Not Violate 18 U.S.C. § 1341*.

Section 18 U.S.C. § 1341 states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not

more than 20 years, or both.

Here the allegations in the Second Amended Petition are that the Defendants conspired to make material misrepresentations to MDED and USDOL regarding the nature of Plaintiffs' and other H-2A workers' work, the hours they would work, and the wages they would receive. (Plaintiffs' Second Amended Collective and Class Action Complaint, p. 41, ¶ 216) [Doc. # 41]. The allegations made by Plaintiffs do not fall within any of the restrictions contained in the relevant statute. For this reason Defendants are entitled to summary judgment on this claim in the Fourth Cause of Action.

> 2.  *Defendants Did Not Violate 18 U.S.C. § 1343*

Section 18 U.S.C. § 1343 states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

"The federal wire fraud statute makes it a crime to effect (with use of the wires) "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *Kelly v. United States*, 590 U.S. ___. 140 S.Ct. 1565, 1571, 206 L.Ed. 882 (2020)(citing 18 U.S.C. § 1343). The wire fraud statute thus prohibits only deceptive "schemes to deprive [the victim of] money or property." Id. (citing *McNally v. United States*, 483 U.S. 350, 356. 170 S.Ct. 2875 (1987).

Good Faith is a complete defense to a charge of using the mails to defraud in violation of § 1341. *Steiger v. U.S.* 373 F.2d 133, 135 (10th Cir. 1967). If a Defendant acts in good faith the intent element of the offense cannot be proven. *See, United States v. Asomani*, 7 F.4th 749, 752

(8th Cir. 2021).

Here, Briggs Traditional engaged MAS Labor H2A, LLC to evaluate its labor needs and to provide potential H-2A workers to work for Briggs Traditional. (SoF ¶ 28). No representation or guaranty was given that any of the Plaintiffs or class members would only work forty (40) hours per week. (SoF ¶ 27). Capen Briggs and Briggs Traditional relied upon MAS Labor H2A, LLC's representations that any H-2A worker contracted to work for Briggs Traditional would not be entitled to receive overtime compensation for the type of work they were being assigned to perform for Briggs Traditional. (SoF ¶ 29). Briggs Traditional believed, in good faith, that it was exempted from paying overtime compensation to the Plaintiffs and class members in this case. Therefore, Defendants are entitled to summary judgment on this claim in the Fourth Cause of Action.

### 3. *Defendants Did Not Violate 18 U.S.C. § 1343*

18 U.S.C. § 1343 states, in relevant part:

> **Work Inside the United States.**--Whoever knowingly and with intent to defraud recruits, solicits, or hires a person outside the United States or causes another person to recruit, solicit, or hire a person outside the United States, or attempts to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment shall be fined under this title or imprisoned for not more than 5 years, or both.

18 U.S.C. § 1343(a).

Here, Briggs Traditional engaged MAS Labor H2A, LLC to evaluate its labor needs and to provide potential H-2A workers to work for Briggs Traditional. (SoF ¶ 28). No representation or guaranty was given that any of the Plaintiffs or class members would only work forty (40) hours per week. (SoF ¶ 27). Capen Briggs and Briggs Traditional relied upon MAS Labor H2A, LLC's representations that any H-2A worker contracted to work for Briggs Traditional would not be entitled

22

to receive overtime compensation for the type of work they were being assigned to perform for Briggs Traditional. (SoF ¶ 29). Briggs Traditional believed, in good faith, that it was exempted from paying overtime compensation to the Plaintiffs and class members in this case. There is no evidence that any Defendant acted knowingly and with the intent to defraud in the hiring and payment of the Plaintiffs and the class members. Therefore, Defendants are entitled to summary judgment on this claim in Plaintiffs' Fourth Cause of Action.

J.     <u>Defendants Are Entitled to Judgment as a Matter of Law on Plaintiffs' Fifth Cause of Action for Filing False Information Returns, 26 U.S.C. § 7434.</u>

In their Fifth Cause of Action Plaintiffs and the class members allege that Briggs Traditional and Capen Briggs filed False Information Returns in violation of 26 U.S.C. § 7434. 26 U.S.C. § 7434 provides, in relevant part: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). The statute further provides that that the statute of limitations for any such case is six (6) years from the date of any filing of a fraudulent information return or one year after the date such fraudulent return would have been discovered by exercise of reasonable care. 26 U.S.C. § 7434(c). A defendant's mere negligence or error cannot establish fraud under the statute. *Doherty v. Turner Broadcasting Systems, Inc.,* 72 F.4th 324, 329-330 (Dist. Of Columbia Circuit, 2023). "'While 'the term recklessness is not self-defining,''the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 330 (quoting *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). That risk must be greater than mere carelessness or negligence. *Id.* at 69, 127 S.Ct. 2201. "Section 7434 certainly does not hold

defendants liable for mere error in filing information returns." *Daugherty*, 72 F.4th at 330.

Defendants could find no case law finding that the laying of sod does not constitute secondary agricultural activity. If there was no clear law on this subject then it would be improper to hold Briggs Traditional and Capen Briggs filed false information returns. All income tax returns that Capen Briggs executed on behalf of Briggs Traditional were based upon Capen Briggs' and Briggs Traditional's belief that all of the Plaintiffs and class members were not entitled to receive overtime wages based upon information provided to Capen Briggs and Briggs Traditional by MAS Labor H2A, LLC. (SoF ¶ 30). If anything the tax returns were filed negligently or in error and did not constituted fraudulently filed tax returns. For these reasons, Briggs Traditional and Capen Briggs are entitled to summary judgment on Plaintiffs' Fifth Cause of Action.

## IV.    CONCLUSION

Defendants are entitled to judgment as a matter of law on all of the causes of action contained in the Second Amended Collective and Class Action because there are no genuine issues of material fact they engaged in any activity in contravention of any law or violated any of the rights of the Plaintiffs and class members.

WHEREFORE, Defendants respectfully request that the Court grant summary judgment in their favor on all causes of action contained in Plaintiffs' Second Amended Collective and Class Action Complaint and for any further relief the Court deems just and equitable.

Respectfully Submitted,

Van Osdol, PC

By: ___/s/ Anthony L. Gosserand_____

Anthony L. Gosserand          MO# 38844
1600 Genessee Street, Suite 246
Kansas City, Missouri   64102
Telephone:      (816) 421-0644
Facsimile:      (816) 421-0758
tgosserand@VanOsdolKC.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 26th day of January, 2024, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Anthony L. Gosserand_____
Attorney for Defendants

25