# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

JOSE ROBERTO RIOS-GUTIERREZ, JOSE JUAN MENDOZA-SERVIN, FRANCISCO JAVIER MARTINEZ-MENDEZ, JONATHAN RODRIGUEZ-ANAYA, and CESAR EDGARDO AVENDAÑO-MARTINEZ, *on behalf of themselves and all others similarly situated*,

<em>Plaintiffs,</em>

<em>v.</em>

BRIGGS TRADITIONAL TURF FARM, INC.; L.C. BRIGGS TURF FARM, LLC; KENOSHA, LLC; NAUDI-D INVESTMENTS, LLC; LAWRENCE CLYDE BRIGGS, *individually and as sole trustee of his family trust*; and LAWRENCE CAPEN BRIGGS,

<em>Defendants</em>.

Civ. Action No.: 4:21-cv-00374-FJG

## REPLY SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS BRIGGS TRADITIONAL TURF FARM, INC. AND LAWRENCE CAPEN BRIGGS

# TABLE OF CONTENTS

Table of Authorities ........................................................................................*iii*

I.      REPLY STATEMENT OF UNCONTESTED FACTS ............................................*SUF-1*

II.     INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

III.    ARGUMENT AND CITATION TO AUTHORITY ....................................................1

    A.    Defendants Falsely Stated in Their Affirmative Summary Judgment
        Motion that Capen Briggs Did Not Employ the Plaintiffs and Other
        Class Members .............................................................................................1

    B.    Defendants' Self-Serving Declarations Should Be Stricken..........................2

    C.    Plaintiffs Are Entitled to Summary Judgment on their Fair Labor
        Standards Act Claims ...................................................................................2

        1.    Defendants Do Not Meet Their Burden of Showing the
            Applicability of the Agricultural Exemption. ....................................2

            i.    Defendants Cannot Show Plaintiffs Worked on
                Defendants' Farms ....................................................................2

            ii.   An H-2A Visa Does Not Exempt the Visa Holder
                from the FLSA's Overtime Requirement ..............................3

            iii.  Spreading Seed and Laying Sod on Off-Farm
                Properties Did Not Have "Significance and Purpose
                Only in Making it Possible" For Defendants to Farm. ..........4

            iv.   Work Related to Laying Sod Was Not Incident or In
                Conjunction with Defendants' Farming Operations .............5

            v.    Installation of Sod and Spreading of Seed Was Not
                 Delivery to Market ..................................................................8

            vi.   Defendants Cannot Support Their Contention That
                Spreading Seed and Laying Sod Defendants Did Not
                Grow is Nevertheless Secondary Agriculture ......................10

            vii.  Even if Plaintiffs' Work at Capen Briggs' House Was
                "At Their Option," They Are Still Entitled to Overtime
                During Those Workweeks ......................................................12

        2.    The FLSA's Three-Year Statute of Limitations Applies to
            Plaintiffs' FLSA Claims. ....................................................................12

Case 4:21-cv-00374-FJG   Document 123   Filed 01/26/24   Page 2 of 35

3.      Defendants Cannot Avoid Liquidated Damages by Claiming
        They Relied on Their Labor Broker's Advice. ...................................13

D.     Plaintiffs are Entitled to Summary Judgment on their Missouri
       Overtime Claim............................................................................................15

E.     Plaintiffs are Entitled to Summary Judgment on their Kansas Wage
       Payment Act Claim .......................................................................................15

F.     Plaintiffs are Entitled to Summary Judgment on Their Section 1981
       Claim  16

G.     Defendants' Stated Reason for Filing False Information Returns
       Does Not Make Sense ...................................................................................18

IV.    CONCLUSION .........................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Mid-American Growers, Inc.*, 167 F.3d 355 (7th Cir. 1999) ..................................... 10, 12

*Brennan v. Sugar Cane Growers Coop. of Fla.*, 486 F.2d 1006 (5th Cir. 1972) ............................ 4

*Centeno-Bernuy v. Becker Farms*, 564. F. Supp. 2d 166 (W.D.N.Y. 2008) ................................. 12

*Chacko v. Texas A&M Univ.*, 960 F. Supp. 1180, 1191 (S.D. Tex. 1997), *aff'd sub nom.*
  *Chacko v. Texas A & M Univ.*, 149 F.3d 1175 (5th Cir. 1998) ..................................... 17

*Doherty v. Turner Broadcasting Systems, Inc.*, 72 F.4th 324, 330 (D.C. Cir. 2023) .................... 19

*Hernandez v. Siri & Son Farms, Inc.*, No. 6:20-CV-00669-MK, 2021 WL 4999022
  (D. Or. Sept. 30, 2021), report and recommendation adopted, No. 6:20 CV 00669-MK,
  2021 WL 4993475 (D. Or. Oct. 27, 2021) ..................................................................... 17

*Holly Farms Corp. v. NLRB*, 517 U.S. 392 (1996) ...................................................................... 11

*In re Richlawn Turf Farms, Inc.*, 26 B.R. 206 (Bankr. D. Colo. 1982) ......................................... 9

*Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir. 2000) .................................................. 13

*Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078 (D. Ariz. 2010) ....................... 17

*Kautsch v. Premier Commc'ns,* No. 06-CV-04035-NKL, 2008 WL 539324
  (W.D. Mo. Feb. 26, 2008) ........................................................................................... 15

*Kline v. Tennessee Valley Authority*, 128 F.3d 337 (6th Cir. 1997) ............................................ 18

*Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022), *cert. denied*,
  144 S. Ct. 71, 217 L. Ed. 2d 10 (2023) ........................................................................ 4

*Martin v. Tiller Helicopter Servs., Inc.*, 778 F. Supp. 1395 (S.D. Tex. 1991), *aff'd sub nom.*
  *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018 (5th Cir. 1993) ............................... 3

*Mayorga v. DeLeon's Bromeliads, Inc., No.* 13-20101-CIV, 2013 WL 3927692
  (S.D. Fla. July 29, 2013) ............................................................................................. 3

*McDonnell-Douglas Corp v. Green*, 411 U.S. 792 (1973) ...................................................... 17, 18

*Mitchell v. Budd*, 380 U.S. 473 (1956) ...................................................................................... 8

*Perez-Benites v. Candy Brand*, LLC, No. 1:07-CV-1048, 2011 WL 1978414
  (W.D. Ark. May 20, 2011) ....................................................................................... 11, 14

*iv*

*Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356 (11th Cir. 2021) ...................... 4

*Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196 (W.D. Mo. 2022) ............. 8

*Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301 (S.D. Fla. 2020) ............................ 17

*Ruiz v. Zoom Video Commc'ns Inc.*, No. C21-1379-RSM-SKV, 2022 WL 770293.
  (W.D. Wash. Feb. 1, 2022), report and recommendation adopted, No. C21-1379-RSM-SKV,
  2022 WL 766994 (W.D. Wash. Mar. 14, 2022) ......................................................... 17

*Spect v. City of Sioux Falls*, 639 F.3d 814 (8th Cir. 2011) ....................................... 2, 11

*Stockdall v. TG Invs., Inc.*, No. 4:14-CV-01557 ERW, 2015 WL 9303105
  (E.D. Mo. Dec. 22, 2015) .............................................................................. 15

*Tobin v. Blue Channel Corp.*, 198 F. 2d 245 (4th Cir. 1952) ........................................ 3

*United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) .............................................. 9

*Walling v. Public Quick Freezing and Cold Storage Co.*, 62 F. Supp. 924 (S.D. Fla. 1945) ......... 3

*Wertz v. Osceola Farms*, 372 F.2d 584 (5th Cir. 1967) ............................................... 4

**Statutes**

26 U.S.C. § 3121(b)(1) ............................................................................... 19

29 U.S.C. § 203(f) ............................................................................... 3, 9, 10

29 U.S.C. § 213(b)(12 ............................................................................... 19

29 U.S.C. § 255(a) ................................................................................... 12

42 U.S.C. § 1981 ............................................................................. 16, 17, 18

8 U.S.C. § 1101(a)(15)(H)(ii)(a) ...................................................................... 3

K.S.A. § 33-1201 .................................................................................... 16

K.S.A. § 44-312 ..................................................................................... 15

K.S.A. § 60-513 ..................................................................................... 16

R.S. Mo. § 290.527 ............................................................................... 13, 15

R.S. Mo. § 516.140 .................................................................................. 15

*v*

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 8

**Regulations**

29 C.F.R. § 501.3(b) ........................................................................................ 4

29 C.F.R. § 780.10 ........................................................................................... 3

29 C.F.R. § 780.152 ....................................................................................... 10

29 C.F.R. § 780.154 ................................................................................ 8, 9, 10

29 C.F.R. § 780.206 ........................................................................................ 5

29 C.F.R. § 784.116 ................................................................................... 3, 11

# I.    REPLY STATEMENT OF UNCONTESTED FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs hereby respectfully submit their Reply Statement of Undisputed Material Facts in response to Defendants Briggs Traditional Turf Farm, Inc's ("Briggs Traditional") and Lawrence Capen Briggs's ("Capen Briggs") Statement of Additional Uncontroverted Facts (Doc. 120 at 46):

1.    All H-2A Visas provided to the Plaintiffs and class members in this case were for the Plaintiffs and class members to perform agricultural labor and secondary agricultural labor including, but not limited to seeding sod and the laying of sod.  (Exhibit "1", p. 2, ¶ 19).

**Plaintiffs' Response: Admitted, in part; Denied, in part.**

Plaintiffs admit that they and other class members engaged in seeding sod and laying sod.

Plaintiffs deny that they and other class members were provided H-2A visas to perform agricultural labor and secondary labor. Defendant Capen Briggs's conclusory and contradictory statements in his self-serving declaration are insufficient to overcome his deposition testimony. Defendants indicated in their H-2A visa submissions that Plaintiffs would be engaging in agricultural field work on Defendants' sod farms, (Capen Dep. Exhs. 26, 33, 37 (2018: DEFENDANTS18; 2019: DEFENDANTS71-72; 2020: DEFENDANTS157) (Doc. 117-28)), despite knowing that their H-2A workers would be installing sod at locations throughout Kansas and Missouri. (Capen Briggs Dep. 96:7–16, 98:5–21, 99:18–102:7 (Doc. 117-28)).

Further, Defendants' statements that seeding sod and laying sod constitute agricultural labor and secondary agricultural labor are improper legal conclusions; not material assertions of fact.

2.    None of the Plaintiffs or class members in this case were ever directed by Capen Briggs or Briggs Traditional or any other individual or entity to perform any type of landscaping duties at commercial, residential and/or government properties.  (Exhibit "1", p. 2, ¶ 20).

**Plaintiffs' Response: Denied.**

Defendants' statement is improper to the extent that it refers to the legal definition of "landscaping" duties, thereby asserting a legal conclusion, not a material assertion of fact.

1

Nonetheless, Plaintiffs deny the above statement and affirmatively assert that they and other H-2A workers were directed to perform landscaping duties on residential, commercial, and government properties. (Capen Briggs Dep. at 18:2-7, 22:23–25; 31:18–22; 35:9–12, 156:5-25 (Doc. 117-28)). Defendants' 2016 H-2B application describes the work performed by employees as follows: "Briggs Traditional Turf Farm, Inc. is landscape contractor which specializes in laying sod. We offer residential and commercial installation and maintenance, including seeding and sodding, golf courses, sports fields and other major-scale installations." (Capen Briggs Dep. Exh. 29 (Doc. 117-28)). Capen Briggs testified that Plaintiffs and other H-2A workers performed this same work. (Capen Briggs Dep. 20:18-24 (Doc. 117-28)).

A few times per season, Capen Briggs directed Plaintiffs to do mowing, gardening, and maintenance work at the house where he lived. (Avendaño-Martinez Decl. at ¶ 17 (Doc. 117-23); Martínez-Méndez Decl. at ¶ 20 (Doc. 117-24); Rodríguez-Anaya Decl. at ¶ 17 (Doc. 117-25); Mendoza-Servín Decl. at ¶ 17 (Doc. 117-26); Ríos-Gutiérrez Decl. at ¶ 20 (Doc. 117-27); Dec. 1, 2023 Decl. of Daniel Werner ("12/1/23 Werner Decl.") (Doc. 117-1), ¶ 4, Ex. DW-10 (Daily Report showing "audit" during "Shop" work) (Doc. 117-11)). The June 10, 2019, Daily Report, Bates number DEFENDANTS07396, shows that Plaintiff Avendaño-Martinez did weeding work at Capen's house and the shop. According to Defendants' payroll records, Plaintiff Avendaño-Martinez worked 57 hours that week. (Avendaño-Martinez Decl. at ¶ 17, CA-1 (Doc. 117-23)). The August 8, 2020, Daily Report, Bates number DEFENDANTS10424, shows that Plaintiff Martínez-Méndez did work at Capen's house. According to Defendants' payroll records, Plaintiff Martínez-Méndez worked 43.567 hours that week. (Martínez-Méndez Decl. at ¶ 20, FM-1 (Doc. 117-24)). The August 10, 2019, Daily Report, Bates number DEFENDANTS07180, shows that Plaintiff Rodríguez-Anaya did weeding work and cleaned the deck at Capen's house. According to Defendants' payroll records, Plaintiff Rodríguez-Anaya worked 43.67 hours that week. (Rodríguez-Anaya Decl. at ¶ 17, JRA-1 (Doc. 117-25)). The August 8, 2020, Daily Report, Bates number DEFENDANTS10424, shows that Plaintiff Mendoza-Servín did work at Capen's house. According to Defendants' payroll records, Plaintiff Mendoza-Servín worked 47 hours that week.

2

(Mendoza-Servín Decl. at ¶ 17, JM-1 (Doc. 117-26)). The August 7, 2019, Daily Report, Bates number DEFENDANTS07175, shows that Plaintiff Ríos-Gutiérrez did work at Capen's house. According to Defendants' payroll records, Plaintiff Ríos-Gutiérrez worked 60.333 hours that week. (Ríos-Gutiérrez Decl. at ¶ 20, JRG-1 (Doc. 117-27)).

Further, the companies that hired Defendants to install sod provided sworn deposition testimony or declarations confirming that the work was incident to their landscaping operations. For example, Jesse Michael Meadows, the President of Rolling Meadows Landscaping, which contracts with Defendants to lay sod, describes how he uses his own landscaping crews— consisting of local workers—to lay sod, but only has Defendants' crews lay sod if his crew is not available. (Rolling Meadows Dep. at 10:16-12:2 (Doc. 117-32)). This is because the sod installation is part and parcel of the landscaping work:

> Q: And if you have a contract with a company to do commercial landscaping that includes the installation of sod, then the expectation of the company and of you is that the project isn't complete until the sod is installed; is that correct?
> A: Yes.
> Q: So if installation of sod is part of a bid and ultimately a contract for a landscaping project, the installation of sod is integral to that project; is that correct?
> A.· Yes.

(Rolling Meadows Dep. at 14:2-13, 22:6-29:3, 30:21-32:23; 34:3-36:15, PL000553-PL000556 (Doc. 117-32)). He then goes into detail about the process of Defendants' sod installation at a residential property, including tilling, removing debris, laying the sod, and cutting the sod around other landscape features according to landscape plans and plot lines. (*Id.*). In fact, for residential construction projects, the final Certificate of Occupancy could not be issued until the sod was laid. (R. Neighbors Decl. ¶ 14 (Doc. 117-37)). Other landscapers and builders who contracted with Defendants to install sod said essentially the same thing in their deposition testimony and declarations. (R. Keith Decl. ¶ 13 (Doc. 117-34); B. Harrison Decl. ¶ 12 (Doc. 117-36); D. Ward Dep. at 19:10-22 (Doc. 117-33); K. King Decl. ¶ 12 (Doc. 117-35); R. Neighbors Decl. ¶ 13 (Doc. 117-37)).

3

3.     Briggs Traditional engaged MAS Labor H2A, LLC to evaluate its labor needs and to provide potential H-2A workers to work for Briggs Traditional.  (Exhibit "1", p. 3, ¶ 22).

**Plaintiffs' Response: Admitted.**

4.     Capen Briggs and Briggs Traditional relied upon MAS Labor H2A, LLC's representations that any H-2A worker contracted to work for Briggs Traditional would not be entitled to receive overtime compensation for the type of work they were being assigned to perform for Briggs Traditional.  (Exhibit "1", p. 3, ¶ 23).

**Plaintiffs' Response: Denied.**

Plaintiffs deny the above statement. Defendant Briggs Traditional worked with, and continues to work with, a migratory worker labor broker called Mas Labor H-2A, LLC when hiring H-2A workers but did not correspond or consult with the company specifically regarding switching from the H-2B program to the H-2A program. (Capen Briggs Dep. 73:12–74:8, 92:10–21, 102:15–103:9, 119:20–23, 122:13–23, Exh. 26, Exh. 33 (Doc. 117-28); Mainerd Dep. 68:18–21 (Doc. 117-30)).

Defendants misrepresented the nature and location of Plaintiffs' work to *Mas Labor H2A,* as reflected in the false government submissions Mas Labor H2A submitted on behalf of Defendants. (Capen Briggs Dep. Exhs. 26, 33, 37 (Doc. 117-28)). On or about February 12, 2018, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2018 Job Order") to Missouri's Department of Economic Development ("MDED") and an Application for Temporary Employment Certification (hereinafter, "the 2018 Application for Certification") to the USDOL (Capen Briggs Dep. 92:10–21, Exh. 26 (Doc. 117-28)). On or about February 12, 2018, Defendant Capen Briggs signed the "Employer's Certification" in the 2018 Job Order. (Capen Briggs Dep. 1–11, Exh. 26 (Doc. 117-28)). The 2018 Job Order listed six (6) work sites, each of which were sod farms, and not locations where sod was installed. (Capen Briggs Dep. 92:22–93:19, 95:19–25, Exh. 26 (DEFENDANTS8), Exh. 27 (Doc. 117-28); Mainerd Dep. 106:16–19 (Doc. 117-30)). During the 2018 season, Plaintiffs did not work on the sod farms, instead, working as landscapers throughout Missouri and Kansas. (Capen Briggs Dep. 96:7–16, Exh. 26 (Doc. 117-28)).

4

On or about January 28, 2019, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2019 Job Order") to the MDED and an Application for Temporary Employment Certification (hereinafter, "the 2019 Application for Certification") to the USDOL. (Capen Briggs Dep. 120:17–7 (Doc. 117-28)). On or about January 28, 2019, Defendant Capen Briggs signed the "Employer's Certification" in the 2019 Job Order. (Capen Briggs Dep. 117:23–118:5, Exh. 33 (Doc. 117-28)). The 2019 Job Order listed five (5) work sites, each of which were sod farms. (Capen Briggs Dep. 117:3–22, Exh. 33 (DEFENDANTS62) (Doc. 117-28); Mainerd Dep. 106:16–19 (Doc. 117-30)). During the 2019 season, Plaintiffs did not work on the sod farms, instead, working as landscapers throughout Missouri and Kansas. (Capen Briggs Dep. 122:6–14 (Doc. 117-28)).

On or about February 7, 2020, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2020 Job Order) to the MDED; and an Application for Temporary Employment Certification (hereinafter, "the 2020 Application for Certification") to the USDOL. (Capen Briggs Dep. 133:13–18, Exh. 37 (DEFENDANTS156) (Doc. 117-29)). On or about February 7, 2020, Defendant Capen Briggs electronically signed the "Employer's Certification" in the 2020 Job Order. (Capen Briggs Dep. 133:19–134:1, Exh. 37 (Doc. 117-28)). The 2020 Job Order listed five (5) work sites, each of which were sod farms. (Capen Briggs Dep. 134:13–135:6, Exh. 37 (Doc. 117-28); Mainerd Dep. 106:16–19 (Doc. 117-30)). During the 2020 season, Plaintiffs did not work on the sod farms, instead, working as landscapers throughout Missouri and Kansas. (Capen Briggs Dep. 134:23–135:6, Exh. 37 (Doc. 117-28)). On or about January 19, 2021, Defendant Capen Briggs submitted a Job Order (hereinafter, "the 2021 Job Order) to the MDED; and an Application for Temporary Employment Certification (hereinafter, "the 2021 Application for Certification") to the USDOL. (Capen Briggs Dep. 145:18–146:2 (Doc. 117-28)).

On or about January 19, 2021, Defendant Capen Briggs electronically signed the "Employer's Certification" in the 2021 Job Order. (Capen Briggs Dep. 147:18–148:1 (Doc. 117-28)). The 2021 Job Order indicated the H-2A workers would be employed on sod farms performing work related to the growing of sod on those farms. (Capen Briggs Dep. 146:12–147:6 (Doc. 117-

28)). During the 2021 season, Plaintiffs did not work on the sod farms, instead, working as landscapers throughout Missouri and Kansas. (Capen Briggs Dep. 148:2–4 (Doc. 117-28)).

Lawrence Capen did not know if the Mas H-2A employees he spoke with were attorneys. (Capen Briggs Dep. 73:15-25 (Doc. 117-28)).

5.      All income tax returns that Capen Briggs executed on behalf of Briggs Traditional were based upon Capen Briggs' and Briggs Traditional's belief that all of the Plaintiffs and class members were not entitled to receive overtime wages based upon information provided to Capen Briggs and Briggs Traditional by MAS Labor H2A, LLC.  (Exhibit "1", p. 3, ¶ 24).

**Plaintiffs' Response: Denied**

Plaintiffs first object to this statement on the basis that it is immaterial. Defendants' belief that Plaintiffs and class members were not entitled to receive overtime wages is irrelevant to this matter in that it has no bearing on Plaintiffs' claim or Defendants' defenses. For example, Plaintiffs' claim under 26 U.S.C. § 7434 that Defendants filed false information returns is based on Defendants misrepresentation of Plaintiffs and other class members as agricultural workers, not Defendants' failure to pay overtime wages. (*See* Doc. 117 at 27-29).

Notwithstanding the above objection, Plaintiffs deny that Defendants truly believed that Plaintiffs and other class members were not entitled to receive overtime wages. In 2016, Defendant Briggs Traditional hired employees on H-2B visas. (Capen Briggs Dep. 20:6–13, 71:18–25, 93:22–94:18, Exh. 27 (Doc. 117-28); Mainerd Dep. 67:12–19 (Doc. 117-30)). Briggs Traditional paid the H-2B visa holders overtime premiums for every hour they worked over forty hours in a workweek. (12/1/2023 Werner Decl. ¶ 5, Ex. DW-17 (Doc. 117-18)). At the time, the H-2B workers engaged in the same job duties as Plaintiffs and Defendant Briggs' Traditional's other H-2A workers. (Capen Briggs Dep. 20:18–24, 95:16–18, 108:12–109:14, 105:16–25, Exh. 28 (Doc. 117-28)).

Defendants' self-serving affidavits cannot overcome Defendants' undisputed actions above. It is axiomatic "that a party may not manufacture an issue of fact or credibility by contradicting the party's own earlier testimony with a declaration or affidavit." *Innis v. Bankers Tr. Co. of S. Dakota*, No. 4:16-CV-00650-RGE-SBJ, 2019 WL 2714509, at *3 (S.D. Iowa Apr. 30,

6

2019) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir. 1983)). Defendants previously paid overtime wages to their employees, meaning that they were aware of the need to do so. Plaintiffs and class members performed the same work as these employees. It is therefore implausible, or at the very least a disputed fact, that Defendants believed that they did not need to pay overtime wages to Plaintiffs and class members. Defendants' conclusory assertion that MAS Labor H2A, LLC provided "information" regarding the same is insufficient and unsupported by the record evidence. *In re Yuska*, 553 B.R. 669, 692 (Bankr. N.D. Iowa 2016), aff'd, 567 B.R. 545 (B.A.P. 8th Cir. 2017) (quoting, *inter alia*, *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985)) ("[u]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

      6.    Briggs Traditional did not pay overtime to Plaintiffs or the members of the class not based upon their race but based upon their H2-A status.  (Exhibit "1", p. 3, ¶ 25).

**Plaintiffs' Response: Denied.**

      Plaintiffs deny that Briggs Traditional did not pay overtime to them or the members of the class based upon their H2-A status and affirmatively assert that Briggs Traditional did not pay overtime to them or the members of the class based on their alienage.

      At all relevant times, Defendants employed local, U.S. citizen workers who performed the same work as Plaintiffs and other H-2A workers.[1] (Capen Briggs Dep. 25:19–26:17, 53:18 (Doc. 117-28); Mainerd Dep. 148:3–5 (Doc. 117-30)). Defendants paid their local, U.S. citizen employees overtime pay for time worked in excess of forty (40) hours per workweek. (Capen Briggs Dep. 26:18–27:3, 72:23–73:3 (Doc. 117-28); Mainerd Dep. 148:6–8, 149:5–7, 149:16–150:2 (Doc. 117-30)). American workers were paid overtime while Mexican workers were not,

---

[1] Some of the U.S. citizen workers also plowed snow, which would have happened, for the most part, when the H-2A workers were not employed at the farm. (Capen Briggs Dep. 26:25-27:3, 54:8-13 (Doc 117-28)).

even when they were performing the exact same work. (Mainerd Dep. at 148:6-150:9 (Doc. 117-30)). The Defendants' office manager, Francis Mainerd testified to this fact:

> Q: So if they were doing the exact same work as the H-2A workers, they do not get paid overtime?
>
> A: Yes.
>
> Q: The answer is –
>
> A: Yes, yes. they would get paid overtime.
>
> Q: Okay.
>
> A: They always got paid overtime because of the flexibility of doing other things.
>
> Q: So it was based on their flexibility of being able to do other things, but not necessarily based on the work they were doing?
>
> A: Correct.

(Mainerd Dep. 150:4-15 (Doc. 117-30)).

8

## II.    INTRODUCTION

Plaintiffs[2] showed in their opening summary judgment memorandum that Defendants concocted a scheme to misrepresent the nature of their employees' work. Defendants hoped this illegal scheme would permit them to hire foreign nationals on H-2A visas. With the H-2A visas secured, Defendants cheated the workers out of overtime premiums and cheated the government out of payroll tax contributions. At the same time, Defendants treated their U.S. citizen workers differently, paying overtime and making the required payroll tax withholdings and payment. Based on the undisputed facts, Plaintiffs are entitled to partial summary judgment as to Defendants' liability under the Fair Labor Standards Act ("FLSA"), Missouri and Kansas wage laws, 42 U.S.C. § 1981, and for filing false information returns. Plaintiffs' show below that Defendants' opposition to Plaintiffs' motion does not negate Plaintiffs' entitlement to summary judgment on those claims.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.    Defendants Falsely Stated in Their Affirmative Summary Judgment Motion that Capen Briggs Did Not Employ the Plaintiffs and Other Class Members.

In their Suggestions in Support of Defendants' Motion for Summary Judgment ("Defs.' Summ. J. Br.")(Doc. 115), Defendants stated, "[t]he uncontroverted facts in this case establish that Plaintiffs and the class members were only employed by Briggs Traditional." However, in their Suggestions in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defs.' Summ. J. Opp. Br.")(Doc. 120), they shift course, indicating that they "acknowledge for the purposes of their response to Plaintiffs' Motion for Summary Judgment that Capen Briggs can be considered an "employer" under that definition as established by the FLSA and relevant case law." These two positions cannot be reconciled.

---

[2] In this Reply, "Plaintiffs" will refer to the Plaintiffs and other class members, unless otherwise indicated. Similarly, because Plaintiffs only seek partial summary judgment against Defendants Capen Briggs and Briggs Traditional Turf Farm, Inc., "Defendants" as used in this Reply refers only to those two Defendants unless otherwise indicated.

1

The Plaintiffs therefore request that the Court strike Defendants' argument that they are entitled to summary judgment on Plaintiffs' alter ego claim, as it relies in part on the argument that Briggs Traditional was the sole employer. At a minimum, Defendants' irreconcilable positions cast doubt on the credibility of their self-serving declarations, which should be sufficient to deny Defendants' summary judgment motion on the alter ego question.

**B.**     **Defendants' Self-Serving Declarations Should Be Stricken.**

As with their Motion for Summary Judgment, Defendants purport to build their case entirely on self-serving affidavits that either ignore or conflict with tens of thousands of pages of documents produced in discovery and multiple depositions. For the same reasons Plaintiffs state in their Suggestions in Opposition to Defendants' Motion for Summary Judgment at pp. 3-7 (Pls.' Summ. J. Opp.") (Doc. 121), which Plaintiffs incorporate by reference, Defendants' self-serving declarations should be stricken from Defendants' summary judgment opposition.

**C.**     **Plaintiffs Are Entitled to Summary Judgment on their Fair Labor Standards Act Claims.**

      **1.**     **Defendants Do Not Meet Their Burden of Showing the Applicability of the Agricultural Exemption.**

          **i.**     **Defendants Cannot Show Plaintiffs Worked on Defendants' Farms.**

Defendants insist that they are entitled to the exemption because "a lot" of the H-2A workers worked "at certain points in time" on Defendants' farms, Defs.' Summ. J. Opp at 49-50 (Doc. 120). But even if that were true[3], Defendants have not and cannot provide adequate evidence to meet their burden of showing their entitlement to the exemption during any specific workweek for which they are claiming the applicability of the agricultural exemption. *See Spect v. City of Sioux Falls*, 639 F.3d 814, 820 (8th Cir. 2011).

---

[3] Plaintiffs state they "never performed any activities on Defendants' farms related to the Defendants' sod cultivation, growing, or harvesting operations." Pls.' Summ. J. Br., SUF ¶ 115 (Doc. 117).

2

As Plaintiffs argued in their opening brief, Pls. Summ. J. Br. at 19-21 (Doc. 117), if a worker performed exempt and non-exempt work during a workweek, there is no overtime exemption. 29 C.F.R. § 780.10. Likewise, where Defendants' own records cannot show their employees performed exclusively exempt work, the employees must be paid overtime premiums. 29 C.F.R. § 784.116 (citing *Tobin v. Blue Channel Corp.*, 198 F. 2d 245 (4th Cir. 1952); *Walling v. Public Quick Freezing and Cold Storage Co.*, 62 F. Supp. 924 (S.D. Fla. 1945)); *Mayorga v. DeLeon's Bromeliads, Inc., No.* 13-20101-CIV, 2013 WL 3927692, at *4 (S.D. Fla. July 29, 2013); *Martin v. Tiller Helicopter Servs., Inc.*, 778 F. Supp. 1395, 1399 (S.D. Tex. 1991), *aff'd sub nom. Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018 (5th Cir. 1993).

If Defendants had records showing the Plaintiffs were "clearly" covered by the agricultural exemption, they should have produced them. They produced none because none exist. The only records are the often indecipherable "Daily Time Sheet" documents Defendants acknowledge are the extent of their records of the work their employees performed. Further, if Defendants wanted to cast doubt on Plaintiffs' claims that they did not perform work on the farm, they could have deposed the Plaintiffs and confronted them about that. Yet, they opted not to take the Plaintiffs' depositions. Defendants cannot now defeat summary judgment by attempting, through a self-serving declaration, to create a question of fact in hindsight. There is none.

### ii. An H-2A Visa Does Not Exempt the Visa Holder from the FLSA's Overtime Requirement.

As their central basis for claiming the Plaintiffs were exempt from the FLSA's overtime requirements, Defendants argue that "All H-2A Visas provided to the Plaintiffs and class members in this case were for the Plaintiffs and class members to perform agricultural labor and secondary agricultural labor including, but not limited to seeding sod and the laying of sod." Defs.' Summ. J. Opp at 51 (Doc. 120). However, as Plaintiffs have argued in their earlier briefing, it is the work—not the visa—that determines the existence of an exemption. As the Seventh Circuit explained,

> Congress has given DOL the task of issuing regulations spelling out what kinds of work qualify for an H-2A guestworker visa. The statute says that those regulations must include, but are not limited to, agricultural workers as defined by FLSA section 3(f). See 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (emphasis added). The current

3

regulations define agricultural labor for purposes of the H-2A program to include "agricultural labor" as defined in FLSA, "agricultural labor" as defined (more broadly) in the Tax Code, logging, and pressing apples for cider. 29 C.F.R. § 501.3(b). In other words, the criteria for receiving an H-2A visa are broader than the FLSA agricultural exemption, and so the fact that [the plaintiff] was admitted to the country on this type of visa does not automatically mean that the FLSA's agricultural exemption applies.

*Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022), *cert. denied*, 144 S. Ct. 71, 217 L. Ed. 2d 10 (2023).

> ### iii. Spreading Seed and Laying Sod on Off-Farm Properties Did Not Have "Significance and Purpose Only in Making it Possible" for Defendants to Farm.

Defendants attempt to distinguish *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1360 (11th Cir. 2021), which Plaintiffs cite in their opening brief, by focusing on the portion of the decision finding that "activities that were performed off a farm but that had 'significance and purpose only in making it possible for the [farming] activity to take place'" fell within the agricultural exemption." *Id.* at 1360 (citing *Wertz v. Osceola Farms*, 372 F.2d 584 (5th Cir. 1967). But Defendants' attempt to connect this part of the court's reasoning in *Ramirez* to Plaintiffs' case here is misplaced. The work Plaintiffs did was not essential to the farming activity.

In explaining what off-the-farm activity is essential to the farming activity so as to fall within the secondary agriculture exemption, the Eleventh Circuit in *Ramirez* describes two earlier cases. In *Osceola Farms,* 327 F.2d at 589, the Fifth Circuit (pre-11th Cir.) found that transporting workers to a farm *for harvesting activities* was secondary agriculture, but the employer's flagmen who stopped traffic so company vehicles could safely transport cane to the mills were non-exempt because they worked principally on public roads. *Ramirez*, 997 F.3d at 1360 (citing *Osceola Farms*, 327 F.2d at 590). Similarly, the other referenced case, *Brennan v. Sugar Cane Growers Coop. of Fla.*, 486 F.2d 1006, 1001 (5th Cir. 1972) (pre-11th Cir.) applied the secondary agriculture exemption to cooks and attendants at "labor camps" close to the fields where the workers harvested sugar cane because "'it would not be physically possible' to place the 'labor camps right in the middle of the cane fields.'" *Ramirez*, 997 F.3d at 1360 (quoting *Brennan*, 486 F.2d at 1011). By

contrast, in this case, Defendants could have grown and sold sod, and delivered that sod to market, without also engaging in the off-farm landscaping work Plaintiffs performed.

In short, spreading seed and laying sod at residential, commercial, and government properties certainly does not make Defendants' growing operations on their farms possible.[4] To the contrary, one activity (spreading seed, laying and cutting sod, and preparing the off-farm properties for both) has virtually nothing to do with the other (growing sod).

### iv. Work Related to Laying Sod Was Not Incident or In Conjunction with Defendants' Farming Operations.

Defendants ask this Court to pretend significant portions of Plaintiffs' legal argument, their Statement of Uncontested Facts, and the referenced evidence, do not exist. However, all show the work Plaintiffs performed laying sod residential, commercial and government properties—including preparing the properties for the sod and cutting the sod once it was installed—was incident to or in conjunction with Defendants' farming operations. Therefore, it was not exempt from the FLSA's overtime requirements.

The only reference to law is Defendants' attempt to recraft 29 C.F.R. § 780.206 in their favor by suggesting its heading, "Planting and Lawn Mowing," makes it inapplicable to laying sod. However, as the only federal overtime regulation mentioning laying sod, it is instructive. The Department of Labor distinguishes planting and bracing a tree from "landscaping operations," which it characterizes as "principally *the laying of sod* and construction of pools, walks drives, and the like." *Id.* The latter are not overtime exempt (nor is lawn mowing).

As for the facts, Defendants falsely state that Plaintiffs' description of the process of sod installation only "referred only to work performed for Rolling Meadows." Defs.' Summ. J. Opp. Br. at 52-53. However, Plaintiffs refer to the Rolling Meadows evidence and multiple other sources of evidence. Pls.' Summ. J. Br. at 13-15 (citing Pls.' SUF ¶¶ 51-62, 76, 111, 124, 126-127, and

---

[4] Stated differently, and using seeding as an example, if an apple grower purchased apple seed from the local Garden Center and instructed his employees to plant those seeds at a customer's house in suburban Kansas City, the work is not exempt simply because the grower also grows apples on his own farm. It has no connection to the farm and certainly does not make the farming operation possible.

5

154) (Doc. 117). Only SUF ¶¶ 58-61 in this range specifically references the Rolling Meadows testimony. Plaintiffs' SUF ¶¶ 51-57 and 62 describe the testimony and declarations of Next to Nature, Neighbors, Arbor Masters, Summit Homes, Hermes, and Defendant Capen Briggs himself, which is essentially identical to the Rolling Meadows testimony.

Defendants largely ignore Plaintiffs' argument that the Plaintiffs' work was not subordinate to Defendants' farming operation and therefore was not incidental or in conjunction with Defendants' farming operations. Pls.' Summ. J. Br. at 15-18 (Doc. 117).[5] Defendants' only argument is that Plaintiffs "do not point to any uncontroverted facts." Defs.' Summ J. Opp. at 53 (Doc. 120). As with the previous mischaracterization of Plaintiffs SUF, Defendants are wrong. Plaintiffs refer to SUF ¶¶ 19, 21-22, 28, 128, and 130 in support of their position. These paragraphs then reference the testimony of Larry Briggs (¶¶ 19 and 28), Capen Briggs (¶¶ 20, 128, and 130), Francie Mainerd (¶ 22) and Defendants' interrogatory responses (¶ 20). Defendants only reference Plaintiffs' SUF ¶¶ 22 and 130. SUF ¶ 22 refers to the following testimony of Ms. Mainerd:[6]

> Q. Now, Capen testified on Monday that each season -- really we're talking 2018 until now, there are one or two H-2A workers who really worked principally on the sod farms; is that accurate?
> A. Yes.
> Q. And the rest of the H-2A workers worked pretty much exclusively in the sod -- in the sod installation site; is that correct?
> A. Correct.

Mainerd Dep. at 107:15-23.

Ms. Mainerd then indicates she would "not necessarily know" where each worker is working, but she can "because they're not running through TSheets [Defendants' time sheets]."

> Q. … And the time sheets that are filling in – out by hand show the job site where the H-2A workers worked; is that correct?

---

[5] It appears Defendants' discussion of this argument is under a misplaced heading. Defendants twice repeat the heading "The Work Performed by the H-2A Workers was Incident to or in Conjunction with Defendants' Farming Operations." Defs.' Summ. J. Opp Br. at 52 and 53. The single paragraph under the second such heading refers to Plaintiffs' argument that laying sod was a business activity distinct from Defendants' sod growing operations.

[6] Ms. Mainerd is the Office Manager for Briggs Traditional and Briggs Turf. Pls.' Summ. J. Opp Br., SUF ¶¶44-45 (Doc. 121). Larry Briggs describes her as "the kingpin" of the two businesses. Larry Briggs Dep. at 80:2-5 (Doc. 117-29)

6

A. They show the projects.
Q. The projects?
A. Yes.
Q. And from there you can infer it was one of either specifically what job site or one of a few
job sites, correct?
A. Yes. As long as they wrote -- if they wrote farm on there, as long as they wrote farm on there, I would know. So, for instance, I know that Mario and Anselmo were laying sod last week. So -- you know what I'm saying. So I know what they did. And it's not clocked in on a time clock. So as long as it was coded as that, yes, I would know.
Q. Okay. And that really helps distinguish the work that Mario, Anselmo and Julio did, because they worked a lot on the farm and then some installing sod; is that correct?
A. Correct.
Q. Okay. Other than them, do you remember ever processing a time sheet for any of the other H-2A workers showing that they worked on the farm?
A. I don't. But I will also give you an example of just this last week when Mario did work out on install a couple hours prior to that, he was out on the farm cutting sod. And it's on the time
sheet for the project.
Q. And that time sheet does not show that he worked some hours on the farm, correct?
A. That's correct.

Mainerd Dep. at 108:25-110:8. Therefore, Ms. Mainerd confirmed she was aware of only three H-2A workers who frequently worked on the farm, but there were times when the timesheets show *these same three workers* working off the farm, though they also may have worked on the farm on the same day, though the on-farm work would not necessarily be reflected on their timesheets. *Id.* at 110:1-8. This, of course, goes to Plaintiffs' argument, *supra* at 2-3 & *infra* at 11-12, regarding Defendants' inability to meet their burden to prove the Plaintiffs only did exempt work during a particular workweek.

Finally, Defendants attempt to cast doubt on Plaintiffs' argument about the total number of employees installing sod. Defs.' Summ. J. Opp. Br. at 53. However, there is no disagreement. In Plaintiffs' Statement of Uncontested Facts, they first present evidence about the total number of H-2A employees who principally worked on the farm (two or three). SUF ¶ 128. The referenced deposition cites confirm this number. Capen Briggs Dep. at 14:20-25 (the same two or three H-2A employees worked specifically on the farm). As for the total number of H-2A worker seasons between 2018 and 2022, Plaintiffs do not dispute Defendants' calculations. Capen Briggs Decl. at

7

¶ 31 (Doc. 120-1).[7] Because some workers worked multiple seasons, Plaintiffs used the total number of H-2A workers (as opposed to worker seasons)—forty-three—Defendants have confirmed throughout the litigation, *see, e.g.,* Defs.' Opposition to Plaintiffs' Motion for Class Certification at 4 (Doc. 70)(confirming forty-three H-2A workers in the at-the-time putative class) and the Court has previously accepted as undisputed. *See Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196, 201 (W.D. Mo. 2022) (confirming forty-three class members satisfied the Fed. R. Civ. P. 23(a)(1) numerosity requirement); Capen Briggs Decl. at ¶ 31 (Doc. 120-1) (listing forty-three H-2A workers). With three principally working on the farm, it is a question of simple subtraction to determine that forty worked "pretty much exclusively" worked off the farm. SUF ¶ 22 (Doc. 117).

Other than the issues explained above, Plaintiffs rest on their opening brief. Defendants have not and cannot refute Plaintiffs' claim their work was incident to and in conjunction with Defendants' farming operations. Therefore, Defendants cannot meet their burden of showing Plaintiffs were employed in primary or secondary agriculture.

### v. Installation of Sod and Spreading of Seed Was Not Delivery to Market.

Defendants take issue with Plaintiffs' argument that installing sod and spreading seed was not "delivery to market" because "Plaintiffs refer to authorities referring to 'farmers [*sic*] markets'." Defs.' Summ. J. Opp. at 54 (Doc. 120). However, in their opening brief, Plaintiffs reference the U.S. Department of Labor regulation's definition of "farmer's market" not a quaint farmers market in a neighborhood square. f. Pls.' Summ. J. Br. at 18 (Doc. 117)(citing 29 C.F.R. § 780.154; *Mitchell v. Budd*, 380 U.S. 473, 481 (1956)). The full provision, in relevant part, is:

> The term "delivery * * * to market" includes taking agricultural or horticultural commodities, dairy products, livestock, bees or their honey, fur-bearing animals or their pelts, or poultry to market. It ordinarily refers to the initial journey of the farmer's products from the farm to the market. The market referred to is the farmer's market which normally means the distributing agency, cooperative marketing

---

[7] The discrepancy between the number of worker seasons described in Capen Briggs' deposition testimony, which Plaintiffs referenced, and his declaration likely is because he was deposed in 2021. His declaration includes the 2022 season.

agency, wholesaler or processor to which the farmer delivers his products. Delivery to market ends with the delivery of the commodities at the receiving platform of such a farmer's market.

29 C.F.R. § 780.154. The "delivery * * * to market" (ellipticals in original) phrase refers to the FLSA's definition of agriculture, which includes "delivery to storage or to market." 29 U.S.C. § 203(f).

Finally, Defendants are correct that the discussion about delivery to market in *In re Richlawn Turf Farms, Inc.*, 26 B.R. 206 (Bankr. D. Colo. 1982) is based on the Internal Revenue Code ("IRC"), rather than the FLSA, definition of agriculture. Defs.' Summ. J. Opp. at 54-55 (Doc. 120). Plaintiffs state this much in their brief and do not suggest the IRC definition would be binding here.[8] Pls.' Summ. J. Br. at 18-19 (Doc. 117). However, a court's interpretation of similar language in a different statute can be instructive. Though the statute is different, the language is similar. As such, another court's interpretation of the similar language may be instructive. *Cf. United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) ("courts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter.") (collecting cases).[9]

However, even if Plaintiffs' reference to *Richlawn Turf Farms* was misplaced, delivery ends at the market platform. 29 C.F.R. § 780.154. If one employee of an apple grower dropped apples off at a market the grower did not own, and a second employee of the grower then cleaned shelves at the market, applied contact paper on the shelves, carried the apples from the loading platform and placed them on the shelves, and then covered the apples to keep them from sliding

---

[8] On the contrary, Plaintiffs distinguish the IRC definition from the FLSA definition elsewhere in their briefing, as the broader IRC definition or agriculture is used to determine whether employment on H-2A visas would be appropriate. *See, e.g.,* Pls.' Summ. J. Br. at 27, Pls. Summ. J. Opp. at 2, 7, 14, and 26-27 (Doc. 121).

[9] Plaintiffs, of course, acknowledge that the subject matters of the IRC and the FLSA are different. Again, Plaintiffs are only suggesting the *Richlawn Turf Farms* discussion of the exclusion of "services in connection with … any agricultural commodity after its delivery to terminal market" from its definition of agriculture—a subpart of the IRC's broader definition *Richlawn Turf Farms* applied in an employment context—may be helpful to the Court's evaluation of what constitutes "delivery to market." It also may be helpful because it is the only court decision Plaintiffs are aware of addressing "delivery to market" in the context of sod installation.

off the shelves, this would not be "delivery" to market. The worker who dropped off the apples at the market's receiving platform would be exempt from overtime. *Id.* The worker who retrieved the unloaded apples, prepared the shelves at the market, and the subsequent steps would be overtime eligible. Likewise, the Plaintiffs' work grading and preparing off-farm properties, laying and cutting sod, pinning the sod, spreading seed Defendants did not grow—projects that routinely took weeks to complete, SUF ¶ 124—was not delivery to market under any reasonable interpretation.

### vi. Defendants Cannot Support Their Contention That Spreading Seed and Laying Sod Defendants Did Not Grow is Nevertheless Secondary Agriculture.

In a *non sequitur*, Defendants suggest in a single sentence with no legal citation that spreading seed and growing sod Defendants did not grow is nevertheless secondary agriculture. Defendants then describe their timekeeping process; again with no law disputing Plaintiffs' claim that it is the Defendants' obligation to produce records showing their employees did exclusively overtime-exempt work in each workweek    .

On the flip side, beyond the unambiguous language of the FLSA's agricultural exemption, 29 U.S.C. 203(f) (to constitute agriculture, the work must be "by a farmer on a farm as an incident to or in conjunction with *such farming operations.*"), Plaintiffs have provided authority where courts have determined handling outside products is non-exempt. Pls.' Summ. J. Br. at 19-20 (citing *Holly Farms*, 517 U.S. at 402 (non-farm poultry); *Perez-Benites*, 2011 WL 1978414, at *12 (non-farm tomatoes); *Adkins v. Mid-American Growers, Inc.*, 167 F.3d 355, 357-58 (7th Cir. 1999) (plants a nursery purchased for resale). Though there may not be case law specifically finding workers who spread outside seed and lay outside sod are non-exempt, there also is no such case law for many agricultural products because agricultural products encompass multitudes of commodities; practically every non-human living thing that is grown, raised, or milked. *See* 29 U.S.C. § 203(f).   Regardless of the commodity, the law in this respect is unambiguous. *See, e.g.,* 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is [incident to or in conjunction with 'such farming operation' within the secondary agriculture definition] … unless all of such commodities are the products of that farm"); 29 C.F.R. § 780.152 (delivery employees

10

"would not be engaged in agriculture in any workweek when they delivered commodities of other farmers, however, because such deliveries would not be performed as an incident to or in conjunction with 'such' farming operations").

As for the facts, Defendants have made Plaintiffs' argument for them by acknowledging that (a) Plaintiffs "spread seed away from farms;" Defs.' Summ. J. Opp. at 51 (Doc. 120); and (b) no Defendant grew seed, Zoysia grass, Bermuda grass, or pure bluegrass Plaintiffs and other H-2A workers spread or installed on non-farm properties. Defs.' Resp. to Pls.' SUF at ¶¶ 131-136. Even if, *arguendo*, preparing off-farm properties for the laying of sod, and the laying, cutting, and pinning of that sod, were secondary agriculture (it is not), the off-the-farm spreading of seed, which Defendants did not grow, and laying varieties of sod Defendants also did not grow, is not agriculture or secondary agriculture under any interpretation of the exemption. For this, Plaintiffs incorporate by reference their prior briefing. *See* Pls.' Summ J. Br. at 19-21 (Doc. 117) (citing, *inter alia*, *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 402 (1996); *Perez-Benites v. Candy Brand*, LLC, No. 1:07-CV-1048, 2011 WL 1978414, at *12 (W.D. Ark. May 20, 2011)); Pls.' Summ. J. Opp. at 14-15 (Doc. 121).

And as for the shoddy the recordkeeping, Defendants rely entirely on Defendant Capen Briggs' self-serving declaration and attempt to place the blame on Operations Manager Felix Rodriguez and Office Manager Francis Mainerd. However, though Defendants produced thousands of pages of Daily Records in discovery, they cannot point to a single record that establishes the exemption "clearly and affirmatively." *Spect*, 639 F.3d at 820; *see also* 29 C.F.R. § 784.116 ("[w]here exempt and nonexempt work is performed during a workweek by an employee and is not or cannot be segregated so as to permit separate measurement of the time spent in each, the employee will not be exempt."). Plaintiffs, on the other hand, produced a sample of ten timesheets with no way of deciphering who did the work, SUF ¶ 113 (Doc. 117 & Doc. 117-16), and Defendants admit the litany of problems making the Daily Reports useless to determine the

work an individual H-2A worker did on a particular day. *See* Defs.' Resp. to Pls.' SUF ¶ 113 (Doc. 120).[10]

### vii. Even if Plaintiffs' Work at Capen Briggs' House Was "At Their Option," They Are Still Entitled to Overtime During Those Workweeks.

With no reference to any legal authority, Defendants argue that Plaintiffs' work at Capen Briggs' house was exempt because Plaintiffs performed the work "at their option so they could get paid for the hours they worked." Defs.' Summ. J. Opp. Br. at 56 (Doc. 120). But that argument is nonsensical. Workers always work to get paid. There is no waiver of overtime rights because Plaintiffs wanted to work and be paid. Defendants' argument is frivolous. With respect to the work Plaintiffs performed at Capen Briggs' house, Plaintiffs rest on their opening brief. Pls.' Summ. J. Br. at 21-22 (citing *Adkins*, 167 F.3d at 359; *Centeno-Bernuy v. Becker Farms*, 564. F. Supp. 2d 166, 178 (W.D.N.Y. 2008)).

### 2. The FLSA's Three-Year Statute of Limitations Applies to Plaintiffs' FLSA Claims.

Defendants incorrectly claim the statute of limitations for Plaintiffs' FLSA claims is two years. Defs.' Summ. J. Opp. at 56-57 (Doc. 120). However, the section of the Portal-to-Portal Act Defendants cite also provides that "a cause of action arising out of a willful violation [of the FLSA] may be commenced within *three* years after the cause of action accrued." 29 U.S.C. § 255(a) (emphasis added). Plaintiffs have alleged the Defendants' violations of the FLSA were willful. SAC ¶¶ 151, 184. Because Defendants spuriously suggest the statute of limitations for Plaintiffs' FLSA claims only can be two years, and Defendants do not brief the question of willfulness, which Plaintiffs raised in their opening brief to explain the applicability of the three-year statute of limitations, Pls.' Summ. J. Br. at 15-16 (Doc. 117), Defendants' two year argument should not be

---

[10] Defendants admit in part and deny in part this allegation. However, the basis for the denial is solely that their drivers filled out the Daily Reports, Operations Manager Felix Rodriguez approved them, and Office Manager Francie Mainerd entered them into payroll. *Id.* This is not a denial of the substance of SUF ¶ 113.

entertained at this juncture. Defendants ignored Plaintiffs' willfulness argument, and Plaintiffs should prevail on this issue.

If the Court opts to overlook Defendants' omission, there is substantial evidence that the Defendants acted willfully because they "knew or showed reckless disregard" regarding the applicability of the exemption. *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000). The fact that Defendants paid overtime premiums to their H-2B visa holders in 2016, to U.S. citizen workers in 2017 when they could not recruit a foreign workforce, *and* to their U.S. citizen workers who worked alongside the Plaintiffs from 2018 onward—all for performing identical work—shows their knowledge of their overtime obligations. Pls.' Reply SUF ¶ 6, *supra*. Further, the 2018 H-2A Clearance Order Capen Briggs affirmed was accurate provides (as required by law) that "[t]he employer assures the availability of no cost or public housing…" and "[h]ousing is provided at no cost only to non-commuting workers." Capen Briggs Dep. Ex. 26, 2017 Clearance Order, Bates Nos. DEFENDANTS000016-16 (Doc. 117-28); *see also* Capen Briggs Dep. at 96:1 – 102:14 (*inter alia*, identifying his signatures on Clearance Order) (Doc. 117-28). Capen Briggs secured H-2A visas based on affirmations to the government that the housing would be free. Therefore, he cannot now claim the illegal kickbacks, *see* Pls.' Summ. J. Br. at 22-23 (Doc. 117), were not willful.

Finally, Plaintiffs would note that the statute of limitations for their Missouri Overtime Law claims is three years, Pls.' Summ. J. Opp. at 17 (Doc. 121) (citing R.S. Mo. § 290.527). Therefore, Plaintiffs' wage damages accrued in Missouri in 2018, including the illegal rent charges for Defendants' Peculiar, Missouri labor camp (which Defendants admit they charged), *Id.* at 22-23, would be recoverable under state law, regardless of willfulness.

3.    **Defendants Cannot Avoid Liquidated Damages by Claiming They Relied on Their Labor Broker's Advice.**

Defendants' sole defense to Plaintiffs' claim that the H-2A workers are entitled to liquidated damages is that they relied on the advice of their labor broker, MAS Labor H2A, LLC. Defs.' Summ. J. Opp. at 57-58. However, as Plaintiffs explained in their opening brief, Pls.' Summ. J. Br.

13

at 22-23, liquidated damages are mandatory unless an employer meets its "difficult burden" of showing "*plain and substantial evidence* to satisfy the good faith and reasonableness requirements." *Perez-Benitez*, 2011 WL 1978414, at *16.

Defendants provide no evidence, other than Defendant Capen Briggs' self-serving declaration, that MAS Labor H2A provided Defendants with the advice they claim. Defendants have not included with their opposition a single page, let alone "substantial evidence," showing they received this advice. *Id.* Further, even if Capen Briggs did receive this advice from MAS Labor H2A, he presents no evidence of the information he provided to MAS Labor H2A upon which they based their alleged advice. To the contrary, by all appearances, Defendants misrepresented the nature and location of Plaintiffs' work to Mas Labor H2A, as reflected in the false government submissions Mas Labor H2A submitted on behalf of Defendants. Pls.' Reply SUF ¶ 4, *supra.* If an employer tells his labor broker his employees will harvest apples on the employer's farm—which is unquestionably overtime-exempt agricultural labor-- knowing they'll stock shelves at a supermarket with produce—including but not exclusively the grower's apples— the employer could not then claim to have relied on the labor broker's advice about the applicability of the exemption. This is the functional equivalent of the stunt Defendants here have tried to pull.

Finally, even if Defendants were fully transparent with MAS Labor H2A and disclosed the Plaintiffs would work off the farm (though the government submissions MAS Labor H2A drafted and Capen Briggs signed listed the Defendants' farms as the work sites), the Plaintiffs would spread seed and lay sod Defendants had not grown, and the Plaintiffs would perform construction and maintenance work at Capen Briggs' house, MAS Labor H2A is a labor broker in the business of placing H-2A visa holders with employers. There is no evidence Defendants sought advice from an attorney or a determination from the Department of Labor. *See Kautsch v. Premier Commc'ns,*

14

No. 06-CV-04035-NKL, 2008 WL 539324, at *3 (W.D. Mo. Feb. 26, 2008) (awarding liquidated damages where the employer did not seek the advice of counsel or DOL).[11]

**D.  Plaintiffs are Entitled to Summary Judgment on their Missouri Overtime Claim.**

Plaintiffs showed in their moving papers that they are entitled to summary judgment on their claim under Missouri overtime law. In response, Defendant repeats the arguments it asserted in its own motion: the agricultural exemption applies, under Missouri law as well as under the FLSA, and the statute of limitations is two years. But, as Plaintiffs established in their opposition to Defendants' motion, which Plaintiffs incorporate by reference, the agricultural exemption does not apply, and the statute of limitations is three years, not two.[12] Pls. Summ. J. Opp. at 16-17. Plaintiffs motion should be granted on their Missouri law claim.

**E.  Plaintiffs are Entitled to Summary Judgment on their Kansas Wage Payment Act Claim.**

Defendants likewise repeat their arguments concerning Kansas overtime law: the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-312, and the FLSA are mutually exclusive, and the

---

[11] Though not mentioned in their argument opposing liquidated damages, Defendants vaguely refer to "audits" conducted by the Missouri Department of Labor and the U.S. Department of Labor. Defs.' Summ. J. Opp. at 47; Defs.' Response to Pls.' SUF ¶¶ 83. 98, 117). However, Defendants again rely solely on a single sentence in Defendant Briggs' self-serving declaration, and they do not include with their counter-SUF any documents reflecting the scope or dates of the alleged audits; nor whether Defendants sought or received guidance from the respective Labor Departments. Further, if Defendants are suggesting they received oral guidance from the Labor Departments, this is not sufficient to meet their burden of showing good faith and a reasonable basis for their claimed belief that they were not required to pay overtime premiums. *See, e.g., Stockdall v. TG Invs., Inc.*, No. 4:14CV01557 ERW, 2015 WL 9303105, at *7 (E.D. Mo. Dec. 22, 2015)(though employer spoke with a DOL representative who said the exemption was a "gray area," liquidated damages were appropriate because the employer "has not read any of the laws or guidance provided by the DOL … [and] did not have an honest intention to ascertain and follow the dictates of the FLSA.").

[12] In their reply brief, Defendants cite R.S. Mo. § 516.140, the general Missouri limitations statute, rather than R.S. Mo. § 290.527, the specific limitations statute applicable to the MWHL. While R.S. Mo. § 516.140 refers to a two-year limitations period for minimum wage and overtime claims, it explicitly does so in reference to the FLSA. And as Plaintiffs have shown, the FLSA limitations period is two years for some violations, but three years for willful violations. In any event, the more specific limitations period is more appropriate.

KWPA has a two-year statute of limitations. As Plaintiffs showed in their opposition to Defendants' motion, Pls.' Summ. J. Opp. at 17-20, (1) Defendants have mis-described Kansas wage law, conflating the KWPA with the Kansas Minimum Wage and Maximum Hours Law ("KMWMHL"), K.S.A. § 33-1201, *et seq.* two entirely separate statutes with different purposes; (2) The KWPA requires payment of "all wages due," including overtime wages, and it should be enforced as written; and (3) the proper statute of limitations for KWPA claims concerning willful FLSA overtime violations is three years, not two years.[13] Plaintiffs should be grated judgment on Defendants' liability under Kansas law.

### F.     Plaintiffs are Entitled to Summary Judgment on Their § 1981 Claim.

Plaintiffs showed in their moving papers, based on direct evidence, that they are entitled to summary judgment on their 42 U.S.C. § 1981 claim because Defendants failed to pay paid overtime to Plaintiffs, who are not U.S. citizens, but did pay overtime to U.S. citizens doing the same work. More specifically, Plaintiffs showed that they can satisfy each element of a § 1981 claim: (1) Plaintiffs are members of a protected class (non-U.S. citizens); (2) Defendants acted with discriminatory intent (Defendants intentionally treated Plaintiffs less favorably than U.S. citizens); (3) Plaintiffs engaged in protected activity (worked for Defendants, that is, entered basic contracts for service); and (4) Defendants violated § 1981 (Defendants denied overtime compensation to Plaintiffs, who needed visas to work in the United States, while paying overtime to U.S. citizen doing the same work.

Defendants respond with an admission and three red herrings.

Defendants' admission is this single sentence, set forth in its own summary judgment motion and repeated in its opposition to Plaintiffs' motion: "Briggs Traditional did not pay overtime to Plaintiffs of members of the class based on their race but based on their H-2A status." Def. Motion p. 26; Def. Opp. p. 61. Defendant's sentence can be paraphrased like this: "Briggs

---

[13] Defendants cite the general Kansas limitations statute for actions limited to two years, K.S.A. § 60-513. But the more appropriate limitations period for KWPA actions is the substantive statute Plaintiffs' KWPA claim is enforcing – the FLSA  -- which sets forth specific two-year and three-year limitations periods.

treated its workers differently based on their visa status, that is, based on alienage." The discrimination Defendants admit to violates § 1981.

As Plaintiffs showed in their opening brief and in their opposition to Defendants' summary judgment motion, which they incorporate here by reference, it is well established that § 1981, because it provides protection to persons who are not "white citizens," applies to alienage discrimination as well as race discrimination. Pls.' Summ. J. Br. at 26 (Doc. 117); Pls.' Summ. J. Opp. at 20-22 (Doc. 121). It is also well established that discrimination based on visa status constitutes alienage discrimination. *Id.* (citing *Ruiz v. Zoom Video Commc'ns Inc.*, No. C21-1379-RSM-SKV, 2022 WL 770293, at *4 (W.D. Wash. Feb. 1, 2022), report and recommendation adopted, No. C21-1379-RSM-SKV, 2022 WL 766994 (W.D. Wash. Mar. 14, 2022); *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1320 (S.D. Fla. 2020); *Chacko v. Texas A&M Univ.*, 960 F. Supp. 1180, 1191 (S.D. Tex. 1997), *aff'd sub nom. Chacko v. Texas A & M Univ.*, 149 F.3d 1175 (5th Cir. 1998); *cf. Hernandez v. Siri & Son Farms, Inc.*, No. 6:20-CV-00669-MK, 2021 WL 4999022, at *7 (D. Or. Sept. 30, 2021), report and recommendation adopted, No. 6:20 CV 00669-MK, 2021 WL 4993475 (D. Or. Oct. 27, 2021); *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1085-87 (D. Ariz. 2010).

Based on Defendants' admission that they discriminated against Plaintiffs based on their H-2A visa status, Plaintiffs' motion should be granted.

Setting aside the admission, Defendants' arguments are full of red herrings. The first red herring Defendants fling is Defendants' recitation of the well-known burden shifting analysis court use in employment cases (including cases involving Section 1981), based on *McDonnell-Douglas Corp v. Green*, 411 U.S. 792 (1973). That is, if Plaintiffs set forth a prima facie case of discrimination, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for its actions, and the burden then shifts back to the plaintiff to show that the reason offered is pretext for illegal discrimination. But the *McDonnell-Douglas* framework is inapplicable here because it applies to circumstantial evidence of discrimination, not direct evidence. Plaintiff have offered direct evidence of discrimination, through deposition testimony showing that Defendants'

policy was to pay overtime to U.S. workers, but not to workers with H-2A visas, even though they were all doing the same work. Pl. Br. 26-27. When a party offers direct evidence of discrimination, the *McDonnell-Douglas* paradigm to analyze circumstantial evidence does not apply. *See Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997).

Defendant's second red herring is its insistence that Plaintiffs cannot establish race discrimination that would violate § 1981. But Plaintiffs bring their 1981 claim based on alienage discrimination, not race discrimination.

Defendants' third red herring is its suggestion that, even if its decision not to pay overtime to Plaintiffs was in error, it did not violate § 1981. As Plaintiffs have shown elsewhere, Defendant's decision was in error, but even if it were not, that is, even if Defendant were not required to pay overtime to Plaintiffs, they have still violated § 1981. Either Defendants were required to pay overtime compensation to its workers, or they were not. But rather than paying overtime to all its workers or to none of them, Defendant drew a dividing line between citizens and non-citizens, in violation of § 1981.

### G. Defendants' Stated Reason for Filing False Information Returns Does Not Make Sense.

In Plaintiffs' affirmative summary judgment brief, which Plaintiffs incorporate by reference, they present an argument and evidence showing Defendants filed false information returns in violation of 26 U.S.C. § 7434. Pls.' Summ. J. Opp. at 62-63. (Doc. 120). Defendants' sole defense to the Section 7434 claim is that the Defendants did not act recklessly. *Id.* However, the basis for this argument is entirely disconnected from Section 7434 and does not make sense. Defendants state only that the false information in the income tax returns was "based upon Capen Briggs' and Briggs Traditional's belief that all of the Plaintiffs and class members were not entitled to receive *overtime wages* based upon information provided to Capen Briggs and Briggs Traditional by MAS Labor H-2A, LLC." *Id.* at 62 (emphasis added). Defendants' purported "belief" is divorced from their obligations under the law. Thus, Defendants have provided no meaningful rebuttal to the arguments set forth in Plaintiff's affirmative summary judgment brief.

18

The FLSA agricultural exemption from overtime, 29 U.S.C. § 213(b)(12), applies a different definition of agriculture than the Internal Revenue Code ("IRC") agricultural exemption from Social Security payroll tax payments. 26 U.S.C. § 3121(b)(1). Therefore, even if, *arguendo*, Defendants were not reckless in their failure to pay overtime (as set forth at pp. 12-13, *supra*, their FLSA violations were willful), Defendants do not refute Plaintiffs' claim that Defendants "ought to have known," *Doherty v. Turner Broadcasting Systems, Inc.*, 72 F.4th 324, 330 (D.C. Cir. 2023), the Plaintiffs were not agricultural workers for tax withholding purposes.[14]

*Doherty,* which Defendants cite, supports Plaintiffs' position. The Defendant in *Doherty* included non-taxable compensation in the plaintiff employee's taxable income on his W-2 form. *Id.* at 330-31. The D.C. Circuit reversed the district court's grant of summary judgment to the employer, finding the plaintiff "did not need to show specific intent" to succeed in his Section 7434 civil claim. *Id.* at 331. However, Defendants' own testimony and evidence shows they knew they made material misrepresentations to the government about the nature and location of Plaintiffs' work. Pls.' Summ. J. Br., SUF ¶¶ 81-99. Defendants knew the H-2A workers would not be employed in agriculture as defined by the IRC (again, the distinction between agriculture and non-agriculture for H-2A visa purposes relies on the IRC definition). Accordingly, summary judgment for Plaintiffs is appropriate on the Section 7434 claims.

## IV. CONCLUSION

For the reasons set forth herein and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment Against Defendants' Briggs Traditional Turf Farm, Inc. and Lawrence Capen Briggs.

---

[14] The fact remains that the Defendants acknowledged they misrepresented the nature and location of the Plaintiffs' work in submissions to the government.

Respectfully submitted this day: January 26, 2024,


**RADFORD SCOTT, LLP**


*/s/ Daniel Werner*
Daniel Werner (*pro hac vice*)
315 W. Ponce de Leon Ave., Ste.1080
Decatur, GA 30030
ph: (678)271-0304
fax: (678)271-0314
dwerner@radfordscott.com


**DUGAN SCHLOZMAN LLC**

*/s/Heather J. Schlozman*
Heather Schlozman  #43234
Mark V. Dugan #39639
Dugan Schlozman LLC
8826 Santa Fe Drive, Suite 307
Overland Park, KS 66212
heather@duganschlozman.com
mark@duganschlozman.com
Ph: 913-322-3528
Fax: 913-904-0213


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that that on January 26, 2024, the foregoing was delivered to

Anthony L. Gosserand, counsel for Defendants, at the following electronic mail address:

tgosserand@VanOsdolKC.com

*/s/ Daniel Werner*
Daniel Werner